### Marx & Blum v. Luling Co-Operative Association et al.

Delivered December 2, 1897.

**1. Agency—Procuration of Guaranty.**
The manager of a corporation, who at the request of the agent of a creditor procures the signatures of directors of the corporation to a guaranty of notes extending the indebtedness, is not the agent of the creditor, and the latter is not chargeable with his knowledge of acts affecting the matter.

**2. Guaranty—Acceptance—Effort to Remove Doubts—Effect.**
An effort by the party guaranteed to procure a new obligation, removing all doubt as to the capacity in which the guarantors bound themselves, does not destroy the effect of the acceptance by their agent of the guaranty and the notes creating the extension in consideration of which it was given, where the guaranty and the notes were retained and no effort was made to rescind them.

**3. Evidence—Written Instrument—Ambiguity Vel Non—Parol Testimony.**
The affix, "as board of directors," after the names of the signers of an instrument purporting to guarantee the existing indebtedness of a corporation of which they are directors, does not render the instrument ambiguous so as to permit parol testimony to show that they merely intended to bind themselves as directors, and not as individuals.

**4. Guaranty—Signatures—Capacity in Which Bound.**
See an instrument of guaranty signed by several persons, with the additions, "as board of directors," and "Mgr.," after their signatures, which was held to bind them individually.

**5. Written Instrument—Alteration—Legal Effect.**
The legal effect of the signature, "T. W. Pierce, Mgr.," is not altered by the erasure of the affix, "Mgr."

**6. Guaranty—Acceptance—Necessity for Notice.**
Notice of acceptance is not essential to the binding effect of a guaranty by directors of a corporation of notes given and accepted in compliance with the proposition of a creditor to extend payment of an existing indebtedness of the corporation on condition that the directors would guarantee it.

Appeal from Galveston. Tried below before Hon. W. H. Stewart.

*Spencer & Kincaid,* for appellants.—1. Words which are merely descriptio personæ, following the signature of a party to a contract, are

immaterial and form no part of the contract, and their erasure can not in any manner affect the liability of any one under the contract. Burlingame v. Brewster, 79 Ill., 515.

2.    The instrument of guaranty is one in presenti, and took effect and became a binding contract upon the defendants upon its execution and delivery, and no further notice was requisite or necessary to the defendants in order to bind them. Johnson v. Bailey, 79 Texas, 517; Wilkins v. Carter, 84 Texas, 441; Bayles' Sure. and Guar., pp. 9, 10, 194-198.

3.    Contemporaneous patrol statements and declarations made by a party to a written contract at the time of entering into the same are not admissible for the purpose of varying or controlling the import and meaning of the contract as expressed in the writing signed by the parties, and it is not competent for a witness to testify to the capacity in which a party to a contract acted in signing it; and especially is this so when the other party to the contract has no notice of anything except what appears upon the face of the paper. Butler v. United States, 21 Wall., 272; Dair v. United States, 16 Wall., 1-6; Fowler v. Allen, 7 L. R. A., 745; Bank v. Gay, 21 S. W. Rep., 479; Campbell v. Murray, 62 Ga., 86.

4.    A contract of guaranty having been completed and entered into, can not be varied or discharged by subsequent unaccepted requests for other and different guaranties. 3 Am. and Eng. Encyc. of Law, sec. 55, p. 889, sec. 57, p. 890; Foster v. Dawber, 6 Ex., 839; Chadbourne v. Davis, 13 Pac. Rep., 721.

*Burgess & Hopkins* and *Hume & Kleberg*, for appellees.—1. The rule which excludes parol testimony to contradict or vary written instruments applies to the language used by the parties. That can not be qualified or varied from its natural import, but must speak for itself. The rule does not forbid an inquiry into the object of the parties in executing and receiving the instrument, or the relation of the parties to each other and the instrument, or the capacity in which they signed the instrument. Brick v. Brick, 98 U. S., 516, and authorities there cited; Russel v. Irwin, 41 Ala., 292; Bank v. Lewis, 78 Wis., 475; Keidom v. Winegar, 54 N. W. Rep., 901; Tombler v. Reitz, 33 N. E. Rep., 789; Swarts v. Cohen, 38 N. E. Rep., 536; Training v. Building Co., 61 N. W. Rep., 904.

2.    Where the signature of an instrument leaves in doubt the capacity in which the maker signs it, parol testimony is admissible to show the true character, purpose, and intention of the signature and the transaction. Baldwin v. Newberry Bank, 1 Wall., 234; Smith v. Alexander, 31 Mo., 193; Baker v. Gregory, 28 Ala., 544; Lazarus v. Shearer, 2 Ala., 718.

3.    A guarantor of future credits is entitled to notice that his guaranty has been accepted, so as to enable him to secure and protect himself against the principal debtor. Failure of such notice releases him from all liability on his guaranty. Wilkins v. Carter Bros., 84 Texas, 438; Mayfield v. Wheeler, 37 Texas, 256; Douglad v. Reynolds, 7 Pet., 125; Adams v. Jones, 12 Pet., 207; Brandt on Sure. and Guar., secs. 157-163.

WILLIAMS, Associate Justice.—This action was begun on the 16th day of November, 1895, by appellants against the association, a private corporation, upon two promissory notes of date March 29, 1895, one for $536.87, due October 15, 1895, and one for $536.88, due November 10, 1895, both bearing 8 per cent interest from maturity, and stipulating for the payment of 10 per cent additional as attorneys' fees, in case they were placed in the hands of attorneys for collection, and against the other appellees individually, as guarantors upon the following instrument:

"Luling, March 30, 1895.
"*Messrs. Marx & Blum, Galveston, Texas:*

"Gents—We hereby agree as guarantors to be responsible and liable to pay you, at your office in Galveston, Texas, any and all indebtedness now or hereafter owing to you by the Luling Co-Operative Association of Luling, Texas, whether upon open account or otherwise, secured or unsecured, principal and interest, with the interest thereon at the rate of 8 per cent per annum from this date. We further agree that without notice to us, said indebtedness or any part thereof may be changed in form and terms of payment as often as may be agreed on by you with the said Luling Co-Operative Association and the same shall still be covered by this guaranty, and that no change of partners, whether by retirement or coming into your firm or in that of the said Luling Co-Operative Association, shall affect this guaranty, but the same shall hold good and be for the benefit of your firm, notwithstanding such changes, and until we notify you of our purpose to be no longer held as guarantors.

"Value received.                    Yours truly,
"Ed. Dickenson,                    T. W. Pierce, Mgr.
"H. L. Rodenberg,                  Wilson Bell,
"J. L. Dickenson, Jr.,                    as Board of Directors.
"W. P. Bell,
"E. P. Hill,
"A. Beversdorf."

The association and Pierce defaulted, and judgment was rendered against them. The other defendants by their answer set up as defenses: (1) That, with plaintiffs' knowledge and at their instance, they executed the guaranty in their collective capacity, as board of directors of the association, and not as individuals, and that their intention and purpose was not to bind themselves individually, but to more securely bind the association and its property, and that the instrument was that of the association and not of themselves. This plea was made under oath. (2) That they were induced to sign the instrument, in the manner shown, by the representation of T. W. Pierce, the agent of plaintiffs; that plaintiffs desired them to do so only to more securely bind the association, and not to make them personally liable. (3) That they so signed upon this express stipulation, and on condition that Pierce sign as manager of the corporation, which he did, they signing thereafter as board of

directors; and that at the instance and contrivance of plaintiffs, the instrument had been altered by the erasure of the word "manager" affixed to Pierce's name. (4) That plaintiffs had refused to accept the guaranty so signed, and demanded that defendants sign it in their individual capacity, so as to make them personally liable, which they refused to do. (5) That the instrument was void and without consideration, for that it was made upon condition that plaintiffs would extend further credit and grant indulgence to the association on a debt which it owed them, and that plaintiffs had never accepted the guaranty upon such condition, and had not notified them of its acceptance. (6) That the association on the 12th day of October, 1895, had made a conveyance to a trustee of all its property to secure its creditors, and that, upon a suit brought by plaintiffs, such conveyance had been adjudged to be a deed of assignment for the benefit of all creditors, and that the estate was being administered for their benefit; that by such action plaintiffs became accepting creditors, and are thereby debarred from prosecuting the suit until such estate shall have been fully administered.

The case was tried before the court, without a jury, and judgment was rendered in favor of the defendants, except Pierce and the association. Several of the assignments of error are based upon the overruling of exceptions taken by plaintiffs to the answer, but it will be more convenient to examine the merits of the defenses presented under the exact facts developed by the evidence, since it is obvious that if those facts establish a defense, the pleading is sufficient to admit proof of it.

The evidence, in which there is very little conflict, shows that the Luling Co-Operative Association was engaged in the mercantile business, and that Pierce was its general manager and the other defendants were stockholders, and composed its board of directors. Previous to the execution of the notes and guaranty, it had traded with the plaintiffs and the firm of L. & H. Blum, and was indebted to both firms in considerable sums, most of which were past due. The association applying to both firms for an extension of time, and desiring further credit from L. & H. Blum, Charles Frenkel, an agent representing the two firms, investigated its financial condition, and went to Luling and had an interview with Pierce, and informed him that the indulgence and credit could not be granted unless the association would give a guaranty signed by responsible parties. Frenkel states, in substance, that Pierce thereupon offered to get the members of the board of directors to sign a guaranty, to which he agreed. Pierce states that Frenkel suggested to him that the signatures of these persons be obtained, and requested and authorized him to do so.

The court below seems to have accepted Pierce's version of this, and we accordingly adopt it. It was agreed between the two that, if the guaranty should be signed by the members of the board of directors, the credit and extension of time asked for should be allowed. Frenkel prepared and left with Pierce, for signature by the members of the board, the paper sued on, and for signature by the corporation, the notes sued on, which allowed the time for payment as agreed upon; also like papers from

L. & H. Blum. It was agreed between them that, as the directors lived in different parts of the county, Pierce should attend to the matter at their meeting, which was to take place on the 29th day of March. On that day Pierce presented the matter to five of the directors present at the meeting, who discussed it, and declined to become individually responsible for the debts, and at first refused to sign the instrument, but after persuasion by Pierce and further discussion among them all, it was agreed that the instrument should be signed by Pierce, as manager, and by the others, as board of directors, and this was done, as appears on the guaranty. By doing this, it was understood among them all that no individual liability was assumed, and that their object was only to make the corporation responsible. All of the parties knew of the indebtedness of the corporation to plaintiffs and L. & H. Blum, and of the presence of the notes to be executed by the corporation, and that the purpose of the transaction was to secure the debts. There is no evidence that there was any misrepresentation of any fact by Pierce, or by anyone else, at the meeting.

Frenkel went to Luling on the same day, and Pierce showed him the guaranty signed as stated, and upon Frenkel's inquiring as to the purpose of the affixes to the names, stated that whenever they signed papers he and the directors signed that way. He also stated that both he and the directors understood that they were individualy liable. Two of the directors, Bell and Beversdorf, had not been present at the meeting, and had not yet signed the guaranty, and Frenkel gave it back to Pierce with instructions to get their signatures. They signed their names along with the others, above the affix. When Pierce returned with it, signed, Frenkel again asked him about the word "manager," and he replied that it did not amount to anything and offered to scratch it out, and did so. Thereupon Frenkel expressed himself as satisfied, and told Pierce that the time would be extended, and the goods ordered from L. & H. Blum would be forwarded, all of which was done. Frenkel and the directors did not meet. Frenkel returned to Galveston with the notes and guaranties, and delivered them to the respective firms. They were taken and kept by the firms, and the credit and extension of time were granted.

The manager of L. & H. Blum raised a question as to the affixes to the signatures, and on April 20, 1895, the two firms wrote the following letter:

"GALVESTON, TEXAS, April 2, 1895.

"T. W. Pierce, Mgr., Luling, Texas:

"DEAR SIR.—Our agent, Mr. Frenkel, has returned and handed us the notes you gave him for our respective amounts, payable next fall, and also a guaranty for each of us, duly signed by yourself and the several directors of your association, which is all satisfactory, and we much appreciate your kindness in the matter.

"We notice that the word 'manager' is written after your name, and erased, and the words 'as board of directors' is added to some of the other

signatures, which rather complicates the meaning of it. Mr. Frenkel has explained that you and the other parties who have signed the guaranties each understand that they are personally liable for the indebtedness of the association to each of us, and upon the good faith of this we have granted the extension desired, but you will of course understand it should be entirely clear, and we kindly ask that you send us a letter signed by yourself and all the other parties who have signed the guaranties to that effect, explaining the matter fully, or it would likely be much better and simpler to have new guaranties signed by yourself and all the parties, from which these objections are omitted, and which we would prefer. We therefore beg to inclose you new guaranties for each of us, and kindly ask that you sign them yourself and also have them signed by the several parties on the other guaranties, namely, Ed. Dickenson, H. L. Rodenberg, J. L. Dickenson, W. P. Bell, E. P. Hill, A. Beversdorf, and Wilson Bell.

"Mr. Frenkel stated that you also expected to have guaranties signed by Mr. Al Taylor, and left blanks with you for that purpose, but if you can get him to join with the others in signing these, we would be glad to have you do so. We regret to put you to this trouble, but know that you will agree with our views that the matter should be in proper shape, and will very much appreciate your kind attention.

"Please return the guaranties to us as early as possible, and with kind regard, we remain,

"Very truly yours,
(Signed)   "LEON & H. BLUM,
"MARX & BLUM."

A correspondence ensued, lasting until September, 1895, which is too lengthy to be inserted. It is enough to say that we do not construe it as a repudiation by plaintiffs and the Blums of the notes and guaranty, but simply as an effort on the part of the two firms to get them put into a less questionable form, to which Pierce, from time to time, responded with promises to try to have it done, without giving any intimation that the signers of the guaranty did not consider themselves personally bound. The blank guaranties were presented by Pierce to some of the directors for signature in June, and they declined to sign them, but the creditors were never notified of such refusal by Pierce.

The court below held that in the obtaining of the signatures of appellees to the guaranty sued on, Pierce acted as the agent of the plaintiffs. Besides the facts already stated, the following appears relative to the point. The evidence of Pierce was given by deposition, and the following cross-interrogatory was propounded by plaintiffs: "Is it not a fact that you did not in any of the matters referred to in either the direct or cross-interrogatories act in any manner whatsoever as the agent or representative of Marx & Blum or Leon & H. Blum? If you claim that you did act as such representative, then state fully the authority by which you so acted, and who conferred it upon you? Detail the conversation or conversations by which the authority was conferred, and with whom it was

had? Do not give your conclusions about it, but state the language of the conversations by which the authority was conferred." Which the witness answered as follows: "I acted for Marx & Blum, and Leon & H. Blum, in getting the guaranties signed. I was authorized by Mr. Frenkel to get them signed."

The directors who testified did not regard Pierce as representing the creditors, but as the representative of the corporation.

Unless plaintiffs are chargeable, through Pierce, with notice of what transpired when the guaranty was signed, they had none except such as the paper itself gave. No notice of the acceptance of the guaranty, further than such as is involved in the transaction itself, was given by plaintiffs to the guarantors.

We think it clear that Pierce, in the transaction in question, was not the agent of the creditors who were seeking to obtain security for their claims. He was the manager of the debtor corporation, negotiating for time in which to pay its debts and for credit to enable it to continue its business, and in soliciting the signatures of the guarantors he was simply complying, in the interest of the corporation in whose success he and they were alike concerned, with the condition upon which the desired accommodation would be furnished by the creditors. We see nothing in the facts of the case to distinguish it, in this respect, from other very common transactions in which a creditor demands that his claim be secured, and agrees beforehand with his debtor upon the security that shall be accepted. To say that, by doing so, he makes the debtor his agent, with power to render nugatory, by his agreements, the very security demanded, would be to distort the transaction from its real and simple character. The debtor acts for himself, or if, as is the case here, the debtor is a corporation, its agent acts for it and not for the creditor. The statement of Pierce that Frenkel requested him and authorized him, and that he acted for the creditors, can not add anything to the facts which actually transpired between them. There is nothing to show that Frenkel requested or authorized him to exercise any agency for plaintiffs. At most, there was only a request to furnish a specified security, and it is wholly immaterial who first suggested it. The creditors exacted it, and the representative of the debtor undertook to procure it. Nothing whatever transpired to alter their relations towards each other, and Pierce's statement as to the capacity in which he acted is only his opinion or construction of the transaction, about the facts of which there is no material conflict in the evidence.

The court below also found that, except upon the hypothesis that Pierce represented plaintiffs, the minds of the parties never met upon the contract. As to the character of the obligation assumed by the signers of the guaranty, we shall see further on. Assuming for the present that the instrument is sufficient to fix upon them a liability according to its terms, it necessarily follows that the minds of the parties did meet, for the evidence clearly shows that Frenkel, the agent of the plaintiffs, accepted it and the notes by which the extension of time was fixed,

and agreed to such extension by both creditors, and to the furnishing of other goods by L. & H. Blum. Not only that, but these firms themselves took and kept both notes and guaranties, and allowed the indulgence contracted for. Their letter shows that such was their action. They could not thereafter have held these papers, and at the same time denied to the debtor the benefit of the consideration. The fact that they endeavored to get obligations which would remove all doubt as to the capacity in which the parties bound themselves, could not do away with the contract already concluded. If, for any reason, they had the right to rescind that contract, they could not exercise it by such action as they took, and did not thereby intend to do so.

Of course, if the contention of the appellees that they were not personally bound by the guaranty can be maintained, the minds of the parties never met; but the conclusion must result from that hypothesis, and not from any assumption that the guaranty was not accepted by plaintiffs. This brings us to the real questions in the case, which are: First, what is the character of the undertaking, ascertained by a proper interpretation of the terms of the guaranty itself; and second, if by such interpretation it be found that such obligation is the personal one of the signers of the instrument, is it permissible for them to show by parol evidence that they did not in fact intend to bind themselves, but only the corporation.

Many authorities have been cited by the parties, and examined by us, which discuss questions somewhat, but not entirely, like that before us. All of them involve the construction of notes, bills of exchange, or other original obligations, by which a primary or direct liability for a debt is created on the part of some one, but in which those whose names are stated as makers, by some addition to their names in the body of the instrument, or by affixes to their signatures, suggest that they may be contracted in a representative or official capacity. The question which thus arises is, Whose obligation is it; who is the real undertaker?

The authorities all recognize certain general principles applicable to such questions. If the instrument, on its face, is clearly that of the person signing it, parol evidence will not be received to exempt him from liability, on the ground that he meant to bind only his principal, though such evidence may be admitted for the purpose of charging the principal. If, on the other hand, the instrument clearly imports an undertaking on behalf of a disclosed principal, parol evidence is inadmissible, with some exceptions, to charge the agent or representative. If the suggestions furnished by the instrument render it ambiguous, so that it is uncertain whether it was intended to bind the principal or the agent, or both, parol evidence of the circumstances attending its execution is admissible to show the real understanding.

We find no difference among the authorities as to the principles governing, but in the application of them to cases great conflict has arisen, growing out of differences of opinion as to the meaning of the language of particular instruments. Some courts hold an instrument to belong to

the first class above stated, which others hold to belong to the second, and still others to the third. Perhaps the differences of opinion in the first and second lines of decisions should serve to show that the third is correct and that an instrument about which such conflict of opinion exists is really so ambiguous that the court should hear evidence to enable it to determine what the contract between the parties really was. The tendency of the decisions in this State has been towards the admission of such evidence as liberally as is warranted by the authorities anywhere else, and really most of the points upon which conflicts have arisen have been settled, for this State, by the Supreme Court. Traynham v. Jackson, 15 Texas, 170; Latham v. Flour Mills, 68 Texas, 127; McIlhenney v. Blum, 68 Texas, 197; Land and Cattle Co. v. Carroll, 63 Texas, 52; Heffron v. Pollard, 73 Texas, 107.

By all the authorities, the rule which excludes parol evidence to vary or contradict a written contract, or to explain it, where it is complete and unambiguous, is fully recognized as controlling when the instrument under consideration is of that character. Appellees advance the following proposition, which fairly presents their contention upon this point in the case: "The rule which excludes parol testimony to contradict or vary written instruments applies to the language used by the parties. That can not be qualified or varied from its natural import, but must speak for itself. The rule does not forbid an inquiry into the object of the parties in executing and receiving the instrument, or the relation of the parties to each other and the instrument, or the capacity in which they signed the instrument."

The proposition is in the language of some of the authorities (Brick v. Brick, 98 U. S., 516), and properly applied, is correct. But it evidently applies only in case the writing itself does not, by its own terms, state the agreement of the parties about the things which parol evidence is offered to show. Thus, as we have already shown, if the instrument shows that the maker contracted as principal, he can not exempt himself by parol evidence that he contracted as agent; and if he contracted in terms for his principal, parol evidence will not be received to charge him personally. So, the inquiry as to whether or not parol evidence is receivable must come to depend on a proper determination of the effect of the instrument in question.

Here the instrument is a collateral undertaking to secure the debt of another. It is not, as were all those in the cases cited, a primary obligation for a debt, presenting only the question, Whose act is it? and the dependent one, Whose debt is it? The answer to those questions, in those cases where evidence was admitted, could be made either way, consistently with the terms of the writing. Can this be truly said of this instrument? We think not. To hold that this is not the obligation of the appellees, is to hold that it is not an obligation at all. The writing is wholly free from ambiguity. It states the name of the principal debtor, and distinctly binds the signers by a collateral undertaking to secure that principal's debt. It assumes to fix no liability whatever on the corporation. That

liability, before the instrument could take effect, must have already been fixed by the transpiring of other facts; that is, the corporation must have been indebted when the guaranty was executed, or must thereafter have become indebted, through its transactions, before the guaranty could become effective. It then bound the signers to be responsible as guarantors, that is, not as principal debtor, but secondarily, for the debt created.

Could a court ever ask the question, Was this the undertaking of the corporation? The express terms of the writing forbid any such inquiry. The language of the body of the instrument leaves no doubt as to its meaning, but the contention is that the affix to the signatures qualifies its effect, and shows, or at least is sufficient to admit evidence to show, that the execution was for the corporation. We think it is true that such affixes to signatures should not be always disregarded, as has been the tendency of some courts, but should be treated as a part of the paper, and the whole should be considered together. But, considered all together, the language of the instrument means, "We, as board of directors, make ourselves collaterally responsible for the debt of our corporation." How could they make themselves collaterally liable as directors, on such an instrument, otherwise than personally? The claim that the purpose was only to bind the corporation is quite inconsistent with the terms in which the obligation is defined. The instrument itself contemplates that the corporation has already bound or will thereafter bind itself, and the undertaking is to guaranty such obligation. By its express language, the guaranty answers every question that can be asked as to its character and the capacity in which the parties signed. Any question as to the significance of the addition to the signatures would be answered by the language of the paper, which shows that it was only descriptive.

It is a settled rule, in construing instruments, that some effect, if possible, is to be given to them, and that a construction which would destroy them is not to be adopted, if avoidable. This rule applies to guaranties as well as to other documents. The evidence offered was intended to show that the guaranty did not operate against appellees, but its effect would have been to show that it had no operation at all. It is entirely too plain and clear in its language to be allowed to suffer such a fate.

Appellees' contention comes to this: Intending to bind the corporation, they signed and delivered an instrument which bound themselves. They do not pretend that there was any mistake as to the language or identity of the instrument executed, but the mistake, if there was one, was in their understanding of the effect of their act. Pierce not being plaintiffs' agent, the latter knew nothing of the state of appellees' minds, except as it was indicated by the instrument which they executed. This was accepted by plaintiffs, and, as its terms bound appellees, and as it must be taken as the exclusive evidence of their undertaking, the contract was complete.

In order not to be misunderstood, we say that our decision is not based upon any mere want of notice to plaintiffs of a defense in favor of defend-

ants. If the facts shown had constituted an admissible defense, it may be true that the circumstances in evidence would have been sufficient to put plaintiffs upon inquiry as to its existence. But we hold that the guaranty is clear upon its face, that its language expresses a personal undertaking of its signers, and that, plaintiffs having accepted it, the contract, according to its terms, was consummated, and can not be changed by the parol evidence admitted below.

It follows from what we have said that the erasure of the addition to Pierce's name was not a material alteration of the instrument. The legal effect of the guaranty was the same after the erasure as it was before. Burlingame v. Brewster, 79 Ill., 515.

Further notice of the acceptance of the guaranty from the plaintiffs to the guarantors was not necessary. When plaintiffs' proposition to extend the time, upon condition of the execution of the guaranty, was complied with and the guaranty was delivered to and accepted by them, the rights of the parties were fixed. No further notice of acceptance was contemplated or required by the nature of the guaranty. We think the cases of Lemp v. Armengal, 86 Texas, 691-693; Johnson v. Bailey, 79 Texas, 517, and Davis v. Wells, 104 U. S., 159, are so conclusive on this point that we need not further discuss it.

Appellees have not, in their briefs, advanced any contention upon their allegations and evidence as to the assignment by the association, and we therefore deem it unnecessary to say more as to that than that we do not see that any defense was made to appear.

The judgment of the court below will be reversed and judgment will be here rendered against the appellees, Ed. Dickenson, H. L. Rodenberg, J. L. Dickenson, Sr., W. P. Bell, E. P. Hill, A. Beversdorf, and Wilson Bell, along with T. W. Pierce, as guarantors, for the amount due on the notes sued on, with 8 per cent interest from their maturity.

*Reversed and rendered.*

Writ of error refused.