SOUTHERN BADGE CO. v. SMITH.

(Court of Civil Appeals of Texas. Dallas. Oct. 28, 1911. Rehearing Denied Nov. 25, 1911.)

1. EVIDENCE (§ 459*) — PAROL EVIDENCE — WRITTEN ORDERS.

An order, addressed to the manager of the emblem bureau of a voluntary association of cotton growers having subsidiary organizations in each of the cotton states, and signed by the president of a state organization, requesting a specified number of official buttons of the association, for which "we agree" to pay a specified sum, does not show on its face that the president is personally bound thereby; and parol evidence to show to whom credit was in fact extended when the order was given, and that the president was not to be individually liable, is admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2109–2114; Dec. Dig. § 459.*]

2. EVIDENCE (§ 459*) — PAROL EVIDENCE — WRITTEN ORDERS.

Where an order for goods signed by the president of a voluntary association, was procured by fraudulent representations that he would not be liable, parol evidence to show to whom credit was in fact extended when the order was given, and that the president was not to be individually liable, is admissible.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 459.*]

3. SALES (§ 357*)—ACTION FOR PRICE—EVIDENCE.

Where an action on an order for goods, addressed to the manager of the emblem bureau of a voluntary association of cotton growers,

and signed by the president of a state organization of the association, was brought by a firm claiming to be the owners of the bureau, the firm had the burden of proving the individual liability of the president, who showed by parol testimony that at the time of the making of the order, it was agreed that he should not be personally liable, and that he did not know that the firm owned the bureau, but believed that the association was the owner.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 357.*]

4. TRIAL (§ 233*)—INSTRUCTIONS—BURDEN OF PROOF.

A charge on the burden of proof must confine the jury to the issues raised by the pleadings and evidence, and an instruction, leaving it to the jury to read the answer and determine for themselves the . allegations found therein, was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 527–530; Dec. Dig. § 233.*]

5. APPEAL AND ERROR (§ 1047*)—HARMLESS ERROR—ERRONEOUS RULINGS ON EVIDENCE.

Where the controlling issue in a case was whether or not defendant was personally liable on the instrument sued on, and there was no interrogatory of defendant, whose ex parte deposition had been taken, which, if taken as confessed, rendered him personally liable, the error, if any, in denying a motion to take as confessed interrogatories propounded to defendant, because of evasive answers, was not prejudicial to plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1047.*]

Appeal from District Court, Grayson County; B. L. Jones, Judge.

Action by the Southern Badge Company against R. E. Smith. From a judgment for defendant, plaintiff appeals. Affirmed.

J. P. Leslie, for appellant. Head, Smith, Hare & Head and Wolfe, Maxey, Wood & Haven, for appellee.

TALBOT, J. Appellants, plaintiffs in the court below, and as surviving partners in the partnership known and. doing business as Southern Badge Company, brought this suit against the appellee, R. E. Smith, on the following instrument: "At Sherman, March 21, 1905. Mr. B. Dixon Armstrong, Mgr. Emblem Bureau Southern Cotton Association, Atlanta, Georgia—Dear sir: Please send the Texas state division of the Southern Cotton Association, one hundred thousand official buttons, for which we agree to pay ten cents each, fifty thousand of these buttons to be delivered at Sherman, Texas, and the balance in lots of one to ten thousand at such places as may by me be directed. Very respectfully, R. E. Smith, President, Texas State Division, Southern Cotton Association."

It appears that in February, 1905, the cotton growers of the south organized what is known as the "Southern Cotton Association," with subsidiary organizations in each of the cotton states, known as the Southern Cotton Association of said states, and further subsidiary organizations, known as parish or county divisions. The object of said organizations was to reduce the acreage of

cotton, and thereby increase the price. The officers of the parent company of said Southern Cotton Association were: Harvie Jordan, president; E. S. Peters, vice president; Richard Cheatham, secretary; J. H. Latham, treasurer; T. J. Simmons, Jr., manager of press bureau; B. Dixon Armstrong, manager of emblem bureau. R. E. Smith, appellee herein, was president of the Texas state division of said Southern Cotton Association. On March 21, 1905, while Harvie Jordan, president, and B. Dixon Armstrong, manager of the emblem bureau, of the Southern Cotton Association, were in Sherman, Tex., the matter of distributing buttons, the emblem of the association, in the state of Texas was taken up by said officers with appellee, as president of the Texas state division.

The order sued on was written upon a letter head of the Southern Cotton Association, and was, as shown thereby, addressed to B. Dixon Armstrong, manager of emblem bureau, Southern Cotton Association. The name of the said Armstrong appears on this letter head as manager of the emblem bureau of the Southern Cotton Association. On February 23, 1905, the Southern Cotton Association, the parent company, through its president, Harvie Jordan, and its secretary, Richard Cheatham, entered into a contract with the Southern Badge Company, a firm composed of A. V. Buck, M. S. Carmichael, and B. Dixon Armstrong, whereby said Southern Badge Company was authorized to sell to the various branches of the Southern Cotton Association the buttons in controversy, upon terms set forth in said contract. Appellee knew nothing of said contract, and it seems to have been kept a secret from him until after there was a failure to sell the buttons, and the Southern Badge Company had probably sustained a loss by reason of its contract. It was then for the first time that appellee, according to his testimony, learned that the Southern Badge Company, of which he knew nothing at the time he made the order for the buttons, was the owner of the emblem bureau, and was undertaking to hold him personally responsible on the order for the buttons. Prior to the date of the order, signed by appellee, requesting the sending of the buttons to the Texas division, he had received letters, purporting to be written by Harvie Jordan, president of the Southern Cotton Association. Some, if not all, of these letters informed the appellee, in effect, that the Southern Cotton Association, of which the writer was president, had prior thereto adopted an emblem, and established the emblem bureau of the Southern Cotton Association and located the same at Atlanta, with Mr. B. Dixon Armstrong as manager, and that the price of the emblem was fixed by the New Orleans convention at 25 cents each. These letters, or some

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

of them, urged that each member of the association purchase and wear the emblem adopted, as the funds to be derived from their sale "are needed by the association to aid in carrying on the great battle we are now waging in behalf of the entire cotton-producing section of our country."

It is alleged that upon receipt of the instrument sued on and set out above the plaintiffs delivered to the defendant 50,000 of said buttons, and at the request of said Smith, defendant, plaintiffs canceled and accepted a countermand of 20,000 of said buttons; that plaintiffs had at all times been ready and willing to deliver 25,000 buttons, not delivered to defendant, and still had them on hand, but that defendant had failed and refused to give directions for their shipment, according to the terms of the agreement between plaintiffs and defendant, and that the same became and are worthless to plaintiffs; that, after said instrument was executed and delivered by the defendant, the said Armstrong transferred his interest in the said partnership to his partners, A. V. Buck and M. S. Carmichael; that said Armstrong died in August, 1908, and the said Buck died in October, 1908, leaving surviving him his heirs, as stated in the petition.

Plaintiffs further alleged that the Southern Cotton Association and the Texas division is and were a voluntary association of persons, not incorporated, and having no legal status or existence, and that it had not and never did have any capital or assets, and that it was and always had been an irresponsible association, and that the defendant had no right to buy said buttons on the credit or pretended credit of said association, and did not do so, but that he did give said order and promised to pay for said buttons, as in said order set out; that defendant had refused to pay for said buttons, and they prayed for judgment for 80,000 buttons, at 10 cents each, bearing interest at 6 per cent. from March 31, 1905.

Defendant answered by general demurrer, general denial, and special answer, alleging, in substance, that the Southern Cotton Association was composed of numerous bureaus and divisions, among which was the emblem bureau of the Southern Cotton Association; that on the date of order upon which suit is based, B. Dixon Armstrong and the plaintiffs were members of the Southern Cotton Association, and that said Armstrong was manager and in control of said emblem bureau, and defendant Smith was president of its Texas state division, and a member thereof; that the defendant signed said order at the personal solicitation of said Armstrong, after it had been discussed and distinctly understood and agreed that said order would and should in no manner bind defendant personally; that it simply was an order on one division of the Southern Cotton Association upon another division or bureau of the same association, and that defendant was only acting as an officer or agent of one of said divisions, and not in his own behalf or for his own benefit, and that such is the fact and in law the effect and meaning of said order on its face; that, if said instrument had any other meaning or effect, then defendant was caused and induced to sign the same by the deliberate and willful fraud of said B. Dixon Armstrong, who at that time was a partner of plaintiffs, and acting for them, as well as for himself; that said Armstrong stated to defendant that said instrument was not to bind and would not bind him personally, and was only intended and to be considered and treated, and would be construed and treated, as the order of said Texas division of Southern Cotton Association to the general or parent, Southern Cotton Association, and to be disposed of for said association on consignment; that said statements were deliberately and willfully false when so made, and that said Armstrong then had it in his mind and heart to entrap defendant, and to attempt to blackmail him by claiming said order to be binding upon defendant individually; that the Southern Badge Company was and is a mere guise and fraud, conceived and gotten up for the purpose of attempting to perpetrate and carry out such fraud; that the plaintiffs had full notice of all these facts before they acquired any interest in said instrument sued on; that said company was not a manufacturer of badges,. and if said order was turned over to it it was only to enable Armstrong and his associates to profit at the expense of the Southern Cotton Association.

The trial resulted in a verdict for the defendant, and motion for new trial being overruled plaintiffs perfected an appeal to this court.

[1, 2] We do not think the court erred in admitting the testimony offered by the defendant, as set forth in plaintiffs' bill of exceptions No. 10, and of which complaint is made in the first assignment of error. We agree with the contention of the appellee, to the effect that the verbal testimony was properly admitted as tending to show to whom the credit for the buttons in question was in fact. extended, and that it was agreed and understood, when the order was given, that defendant, Smith, was not to be individually liable. The instrument sued on does not, in our opinion, conclusively show on its face that defendant was personally bound thereby. The contention of the appellee is, not simply that he did not intend to be personally bound by the instrument, but that it was distinctly understood and agreed that he would not and should not be so bound. It is well established that, if the instrument sued on clearly shows on its face that it is the obligation of the person who signed it, "parol evidence will not be received to exempt

him from liability, on the ground that he meant to bind only his principal." If, however, "the suggestions furnished by the instrument render it ambiguous, so that it is uncertain whether it was intended to bind the principal or the agent, or both, parol evidence of the circumstances attending its execution is admissible to show the real understanding." Marx v. Luling Co-Op. Ass'n et al., 17 Tex. Civ. App. 408, 43 S. W. 596; Ziegler v. Fallon, 28 Mo. App. 299. The order for the buttons in this instance is by its terms a request that the same be sent to the Texas state division of Southern Cotton Association, and a promise that "we" will pay therefore, and affixed to the signature of the appellant are the words, "President, Texas State Division, Southern Cotton Association." These words added to the signature of appellee, and the language used in the body of the instrument, are sufficient to at least suggest that appellee, in signing the same, was contracting solely in a representative or official capacity. If, however, we are mistaken in this, then it seems clear that the allegations of the appellee's answer, to the effect that he was fraudulently induced to believe that he was dealing with a bureau or branch of the Southern Cotton Association, that he would not be personally liable for the buttons ordered, but was merely taking them on consignment, that the Southern Badge Company had perpetrated a fraud upon him in purporting to make a contract between two divisions of the Southern Cotton Association, while one of said divisions was owned by individuals, which fact was kept secret for the purpose of entrapping and defrauding appellee, etc., were sufficient to authorize the admission of said testimony complained of, and that said testimony was sufficient to avoid the contract for fraud.

[3, 4] The second assignment of error complains of the court's refusal to give plaintiff's special charge, which reads as follows: "You are hereby instructed that plaintiff's cause of action in this suit is founded on an order or contract in writing, signed by defendant, and you are therefore instructed that the burden of proof is on defendant to prove by a preponderance of the evidence any allegations in derogation of said order; and if you do not believe from the evidence that said allegations in said derogation of said order have been proved by defendant, by a preponderance of the evidence, you will find for plaintiffs." There was no error in refusing this charge. It was doubtless requested upon the theory that, although signed by the defendant in his representative capacity, yet, as the instrument did not expressly stipulate that he was not to be personally liable thereon, he was so liable. In this view, as heretofore indicated in this opinion, we do not concur. The instrument sued on is so drawn that it is at least doubtful whether the parties thereto intended that the agent, Smith, or his principal should be personally bound. As has

been seen, the instrument purports to be an order from appellee, as president of the Texas division of the Southern Cotton Association, on B. Dixon Armstrong, as manager of the emblem bureau of the same association. The suit was filed by plaintiffs under the name of the Southern Badge Company, a firm composed of B. Dixon Armstrong, A. V. Buck, and M. S. Carmichael, claiming to be the owners of the emblem bureau of the Southern Cotton Association. The allegations of the petition were denied, and the introduction of the instrument, made the basis of the suit, without proof of the alleged facts referred to would not, it occurs to us, entitle the plaintiffs to recover. Besides, we think, as urged by appellees' counsel, the charge is incorrect in the form requested, in that it is too broad, and left too much to the jury. If, however, it be true that the case made by the plaintiffs shifted the burden of proof to the defendant, as contended by appellant, then a charge upon that phase of the case should have confined the jury to the issues raised by the pleading and evidence, and not left it to the jury to read the defendant's answer, and determine for themselves what allegations found there were in derogation of the instrument sued on.

The third assignment of error has been disposed of against appellants by what we have said in discussing the first assignment.

The fourth assignment will be overruled. The charge here complained of did not authorize the jury to find in favor of the defendant on matters which the law did not permit to be pleaded in defense of plaintiffs' alleged cause of action. The facts grouped in this charge, the existence of which would, according to the court's instruction, authorize a verdict for the defendant, were legitimate matters of defense, and sustained by the evidence.

[5] The fifth assignment is to the effect that the court erred in refusing to sustain plaintiffs' motion to take as confessed the interrogatories propounded to the defendant, whose ex parte deposition had been taken and was on file, because the interrogatories were answered evasively. The court did not commit reversible error in overruling this motion. It is clear, we think, that some of the answers of the witness, as set out in appellants' brief, were not evasive, or so evasive as to authorize the taking of them as confessed under our statute. And, if it be conceded that some of them were evasive, still we do not regard the testimony that would have been obtained by taking such of the interrogatories as confessed as were evaded of such a material character as to warrant this court in saying that its admission would probably have resulted in a different verdict from that returned on the trial. In other words, the court's action in this matter resulted in no substantial injury to appellants. The controlling question in the case was whether or not the defendant

was personally liable on the instrument made the basis of the suit and there is no interrogatory of the witness which, if taken as confessed, would render the defendant personally responsible for the buttons ordered by him; therefore, the plaintiffs not having been harmed by the court's ruling, the verdict and judgment should not be disturbed because thereof.

The other assignments need not be discussed. It is sufficient to say that none of them point out reversible error.

The judgment of the court below is affirmed.