**MARTIN v. HEMPHILL et al.    (No. 6179.)**

(Court of Civil Appeals of Texas.    Austin.
        March 31, 1920.    Rehearing Denied
                 April 28, 1920.)

**1. Evidence ⬤⇒418—Plain statement of agency cannot be varied by parol that agent signed for his own benefit.**

Where a buyer signed contracts in the name of a firm as its agent, he could not be permitted to contradict the plain statements of the written agreement by testifying that he signed them for his own benefit, and was doing business in such other party's name.

**2. Names ⬤⇒10 — Principal and agent ⬤⇒ 183(2)—Rule that party under assumed business name may recover not applicable where party signed as agent.**

Generally a person may assume a fictitious or artificial business name, or even the real names of other natural persons, in making contracts; and, where the contract is not inconsistent with such theory, recovery may be had by the person really contracting under the assumed name, but the rule does not apply where one signs in the name of natural persons as their agent.

**3. Banks and banking ⬤⇒96—Buying and selling cotton for future delivery ultra vires.**

In an action against a bank officer personally and against the bank for breach of contract for sale of cotton, petition held not to show cause of action, since the transaction is ultra vires; it not being alleged that the bank had, when contracting any cotton to deliver, or would in due course of business acquire such cotton as collateral to any loans made; it not being within the bank's power to engage in buying and selling for future delivery.

Appeal from District Court, Coleman County; J. O. Woodward, Judge.

Suit by T. W. Martin against C. W. Hemphill and the Central State Bank of Coleman, in which the latter upon exceptions was eliminated as a defendant, and judgment was rendered for the defendant C. W. Hemphill, and the plaintiff appeals. Affirmed.

Snodgrass, Dibrell & Snodgrass, of Coleman, for appellant.

W. Marcus Weatherred, of Coleman, for appellee.

BRADY, J. Appellant filed this suit against the appellees, C. W. Hemphill and the Central State Bank of Coleman, a state banking corporation, to recover damages for the breach of certain contracts for the sale of cotton by appellees to appellant. The appellees filed separate answers, and the trial court sustained exceptions of the appellee Central State Bank, which eliminated that defendant from the suit.

The case was tried before a jury, and the court peremptorily instructed a verdict in favor of the remaining defendant, C. W. Hemphill. Judgment was rendered upon the verdict for such defendant, from which this appeal has resulted.

Appellant's cause of action was based upon certain contracts for the purchase of cotton made at different dates during the month of September, 1917, which contracts were each evidenced by written confirmations. The confirmations were signed with the printed name, McDonald Bros., by T. W. Martin, the latter name being written. It was alleged that the confirmations were each delivered

to C. W. Hemphill and accepted by him, and that, at the time of the making of the contracts and the issuing of the confirmations, appellant was engaged in the business of buying and selling cotton in the town of Coleman, in Coleman county, Tex., for himself, but was transacting business under the name of McDonald Bros. It was further alleged that these facts were well known to the defendant C. W. Hemphill. These allegations were denied both generally and specially.

Appellant offered to prove the facts as alleged, but, upon objection by the appellee Hemphill that the proof tendered was an attempt to vary and contradict by parol the terms of written contracts, the court excluded such testimony.

The bill of exceptions upon this point shows that appellant testified, in substance, that he resided in Coleman, Coleman county, Tex., during the cotton season of 1917–1918, and had been following the business of buying and selling cotton for 15 or 20 years, sometimes buying for himself and sometimes for other people; that during the cotton season of 1916 he was engaged in buying cotton at Sweetwater, Tex., for McDonald Bros., of that place; that during the season of 1917 and 1918 he was engaged in buying and selling cotton at Coleman.

When it was attempted to show the manner and name in which he did business during the season of 1917, objection was made, and the jury was retired. During the retirement of the jury, appellant testified that he did business at Coleman during 1917, under the name of McDonald Bros., and that he was the sole constituent member of such firm. He testified that he made the purchases in question from appellee C. W. Hemphill, and that in each instance he issued a written confirmation, which correctly stated the date, the amount, and the price and terms of the contract. The first confirmation is typical of all, and is as follows:

Coleman, Sept. 8, 1917.
C. W. Hemphill. Dear Sir: We beg to confirm herewith purchase from you as follows:
100 B/C at 19⅝ B/M
Differences as Follows:
Good middling..........⅝.......On
St. middling.............¼........On
Middling .........................
St. low middling........⅝.......Off
Low middling...........1¢.......Off
St. good ordinary.................Off
Spots ...........................Off same grade white
Tinges ..........................Off same grade white
Terms: Oct. 15th.
Reimbursement,
E. & O. E. Yours very truly, McDonald Bros.,
By. T. W. Martin.

It was also testified by appellant that he had previously had a conversation with Hemphill, concerning the use of the name of McDonald Bros. in the contracts. The substance of this testimony was that local merchants had run a garnishment against appellant's bank account, and that he suggested running the cotton account in the name of McDonald Bros., to avoid the garnishment of his funds, to which Hemphill assented.

Appellant also testified that Hemphill never delivered the cotton upon any of these contracts, but requested an extension of time, to which he consented, provided Hemphill would pay any overdrafts created by the purchase of other cotton to fill the contracts. It was not claimed that there was any definite period of extension.

As stated, the court excluded this testimony, and in the bill of exceptions qualified the same as follows:

"This suit was brought by T. W. Martin on written confirmation signed 'McDonald Bros., by T. W. Martin,' T. W. Martin having testified that during the season of 1916 he bought cotton for and represented McDonald Bros., which was a cotton firm engaged in buying and selling cotton, when he sought to testify that in the confirmations issued he was not acting for McDonald Bros., but for himself under the name of 'McDonald Bros.,' the defendant objected on the ground that the written confirmation, by the manner of its signature, showed that T. W. Martin was not signing as an individual, but as the agent of McDonald Bros., and that Martin should not be permitted to vary the legal meaning and effect of the signature and of the written instrument, by parol testimony that he was acting for himself in so signing the instrument, which objections were by the court sustained under the decision of Heffron v. Pollard, 73 Tex. 96, 11 S. W. 165, 15 Am. St. Rep. 764."

Appellant's claim against the bank was based upon the theory that Hemphill was the managing officer of the bank, and that he did not make the purchases from appellant for his own account, although holding himself out as principal; that since the making of the contracts appellant had learned that Hemphill was in fact acting for and on behalf of the bank, and that the latter was liable as the undisclosed principal.

To avoid the claim of ultra vires, which was urged by the bank, and sustained by the trial court, appellant alleged that the bank, a state banking corporation, as an incident of its authority to lend money and take security as collateral, including cotton in bales and public weighers' receipts, had the authority to sell such collateral, and to realize therefrom. That by virtue of this power, and in pursuance to universal custom among banking institutions at the place of the contracts, the bank had authority to make the contracts in question.

## Opinion.

[1] The principal questions upon this appeal are whether the trial court correctly in-

terpreted the contracts as not binding appellant as principal, but as showing that he executed the confirmations as the agent of McDonald Bros.; and whether the court correctly held that appellant should not be permitted to vary the legal meaning and effect of the signature and of the written instruments by parol testimony that he was acting for himself in signing the same.

It is in substance the contention of appellees that the contracts were plain and unambiguous, and showed upon their face that appellant did not execute the same for himself and as an individual, but in the capacity as agent for McDonald Bros.; and that, therefore, parol evidence would be inadmissible to vary the meaning and legal effect of the instruments.

Upon the other hand, it is claimed by appellant that the printed signature of the name McDonald Bros., not revealing whether it was a corporation or partnership, and, if a partnership, not disclosing the constituent members of the firm, parol evidence was admissible to show who was transacting business in that name, and that such testimony would not be contradictory, but explanatory of the written instrument.

Both parties rely upon the case of Heffron v. Pollard, 73 Tex. 96, upon the authority of which the trial court based his ruling in excluding the proffered testimony, and in peremptorily instructing for appellee Hemphill. Appellant's ground of reliance upon the above case is the statement in the opinion that where the name used in a contract is a fictitious one, and not that of a real person, it may be shown that the person, claiming the benefit of the contract, employed the fictitious name as his business name in the transaction, and that the contract was made for his benefit. We have carefully examined the facts and holding of the Supreme Court in Heffron v. Pollard, and have reached the conclusion that the case is directly in point, and is adverse to the contentions of appellant. In that case the contract described the vendors by their true names, and was so signed by them. It also described the purchaser as Jno. W. Fry, and was signed "Jno. W. Fry, per Heffron." The trial court permitted the introduction of oral testimony to show that the defendant Heffron signed the contract for himself, and in the presence of plaintiff. The defendant testified that he signed the contract just as it purported, but that he signed it as the agent of Fry, and not for himself, and that he had no personal interest in it. The contract was thereupon admitted, over the objection of the defendant. The Supreme Court held that it was error to admit the oral testimony, because it varied and contradicted the plain meaning of the written instrument.

In the course of the opinion, Justice Gaines, speaking for the Supreme Court, used this pertinent language:

"In the present case also the name is not a fictitious one. It is the name of a real person. But the contract purports to bind him alone, and upon its face is inconsistent with the idea that the defendant in signing it may have intended to use it for his own business name. His signature as agent clearly negatives the conclusion that any such construction was intended to be put upon it. The intention of the parties to a written contract must be derived from the writing itself when its meaning is clear. Can it be said that the admission of parol evidence to show that the contract before us was made for the benefit of defendant and was intended to bind him does not violate this rule? We think not. The contract clearly shows the relation of all the parties to it, who was to be bound and who was not to be bound, and its legal effect cannot be varied by such evidence."

We are unable to distinguish the facts in the Heffron Case from those in the instant case, and are of the opinion that the trial court properly excluded the testimony of appellant, seeking to show that he did not sign the contracts as agent for McDonald Bros., but for himself and for his own benefit.

The contracts here, as in the Heffron Case, show the relation of all the parties to them— who was to be bound and who was not to be bound—and their legal effect cannot be varied by parol evidence. If appellee Hemphill had delivered or tendered the cotton in compliance with the contracts, and had brought suit against appellant for damages, the latter could well have answered that he did not sign the contracts as binding upon him, but signed the same solely as the agent of McDonald Bros., who purported to be bound, and could have objected to the introduction of parol evidence to show that the contracts were otherwise.

It seems, under the holding in the Heffron Case, that if the contracts had been signed in the name of McDonald Bros. only, it would have been permissible to have introduced the contracts, upon proof that Martin signed the same, and that the contracts were made for his benefit, he assuming the name of McDonald Bros. as his business name in the transaction. But here, as in the Heffron Case, the writing was inconsistent with the theory that McDonald Bros.' name was used as the business name of appellant.

[2] It must be conceded that it is usually permissible for a person to assume a fictitious or artificial business name, or even the real names of other natural persons, in the making of contracts, and where the contract is not inconsistent with such theory, a recovery may be had by the person really contracting under the assumed name. See valuable foot-

note 56 L. R. A. (N. S.) p. 983 et seq. However, as indicated above, this rule is not applicable in the present case, because the contracts clearly appear to have been made for McDonald Bros., through appellant as agent.

In addition to the case of Heffron v. Pollard, supra, the following authorities may be cited in support of our conclusion: Marx v. Luling Co-operative Ass'n, 17 Tex. Civ. App. 408, 43 S. W. 596, 6 L. R. A., footnote, page 40.

[3] The decision upon the question just discussed is probably controlling of this appeal, but the further point is made in appellant's brief that the trial court erred in sustaining the exceptions of the defendant Central State Bank. As that defendant was eliminated from the case, upon exceptions to the petition, we think it proper to state our views upon the question thus presented.

An examination of appellant's petition discloses that the sole ground upon which the bank was sought to be held was that it was the undisclosed principal in the contracts, and, as pointed out in the statement of the case, had the corporate power to make and be bound by the contracts, as an incident to its authority to lend money and take security as collateral, and also in pursuance to custom of banking institutions.

We hold that plaintiff's petition wholly fails to state a cause of action against the bank, for the reason that, under the pleading, such transactions were ultra vires the corporation. It was not alleged that the bank had, at the time of the making of the contracts, any cotton to deliver thereunder, or that it would in due course of business acquire such cotton as collateral to any loans made. The mere potential ability of the bank to acquire such property in the future would not, in our opinion, suffice to give it authority to make contracts of this character for future delivery. Neither would the bank be bound by custom, upon contracts of its managing officers, for the future delivery of cotton, in such circumstances. Under the pleadings, to hold the bank liable under these contracts would be, in effect, to recognize that a state banking corporation could engage in the business of buying and selling cotton for future delivery, a doctrine which this court cannot sanction.

We must not be understood as laying down any general rule, applying to all cases in which a bank has contracted for the delivery of cotton in the future, but we merely hold that, under the averments of the petition and the contracts involved in this case, the bank would not be liable.

Believing that the case was correctly decided below, and no reversible error appearing, the judgment is affirmed.

Affirmed.