**NORTHERN PROPANE GAS COM-
PANY, Appellant,**

v.

**Mike COLE, Appellee.**

No. 24623.

United States Court of Appeals
Fifth Circuit.

May 6, 1968.

Dean Moorhead, Austin, Tex., Robert Q. Keith, Keith, Mehaffy & Weber, Beaumont, Tex., for appellant.

John G. Tucker, Orgain, Bell & Tucker, Beaumont, Tex., for appellee.

Before BROWN, Chief Judge, and BELL and THORNBERRY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This is a sort of man-bites-dog situation. Instead of the usual situation in which the author, confector and instigator of a boiler plate adhesion-type contract seeks to hold the weaker, pliant, submissive, unequal acceptor to the literal pound of flesh, the reverse is here claimed. Asserting with dead earnestness that its own form contract, filled in by its own responsible and presumably articulate representative of considerable responsibility, is ambiguous in its reference to the identity of all the parties to be bound by it, the contention is made that the Trial Court erroneously granted summary judgment since a question of fact existed as to the intention of the parties on which extrinsic evidence was admissible. In this setting in which there is not a single identifiable new question of law, or for that matter, much of a dispute as to what the law is, we agree with the Trial Court and affirm.

What is specifically at issue is the convenant not to compete contained in a buy-out contract between the acquirer, Northern,[1] and Economy,[2] the local deal-

---

1. Northern Propane Gas Company, the Appellant, a Delaware corporation with its principal offices in Omaha, Nebraska.

2. Economy Gas & Supply Company, a Texas corporation.

er being bought out. More specifically the question is whether in addition to binding Economy, the corporation, the covenant also bound Mike Cole, its President and $99\frac{44}{100}\%$ sole stock holder. What launched the controversy was the unabashed re-entrance into the LP-gas business in the trade territory prescribed by Mike Cole within a couple of months after the execution of the contract, triggered presumably because Northern decided to terminate the employment of Mike Cole's wife. To make an ambiguity takes a lot of doing in this simple contract.[3]

In its formidable undertaking Northern insists that there was a genuine material issue of fact as to the intention of the parties concerning whether Mike Cole intended to bind himself in his individual capacity as well as in his capacity as agent (President) for the corporate transferor. Its attack is anchored on Cavaness v. General Corp., 1955, 155 Tex. 69, 283 S.W.2d 33, principally because the Supreme Court there approved § 323 of

3. This contract form was on a typewritten form. The matter interlined by typewriter is shown in italics. Handwritten signatures are shown as "/S/ Mike Cole," etc.

AGREEMENT OF SALE

THIS AGREEMENT, made this *1st* day of *August*, 1964, between *Economy Gas & Supply Co.*

(hereinafter referred to as "Seller"), and NORTHERN PROPANE GAS COMPANY, a corporation having its principal offices in Omaha, Nebraska, (hereinafter referred to as "Buyer"), WITNESSETH THAT:

In consideration of the mutual promises, covenants and agreements of the parties herein contained, it is agreed as follows:

1. That Seller, in consideration of the sums herein agreed to be paid by the Buyer, has granted, sold and conveyed, and by these presents does grant, sell and convey unto the Buyer, the following described property, to-wit:

> [Here follows description of tank trucks, propane storage tanks and accounts receivable]

2. Buyer agrees to pay for all of the foregoing a total of Twenty-one Thousand, Three Hundred and Twenty Dollars ($21,320.00), receipt of which is acknowledged by Seller's signature to this Agreement.

3. Seller, for himself and for his heirs, successors and assigns, does hereby covenant with Buyer and its assigns, that he is the true and lawful owner of the goods described above and has full power and authority to sell and convey the same; that the title conveyed hereby is clear, free and unencumbered; and that he does hereby warrant and will defend the same against the claims of all persons whomsoever.

4. Seller further agrees, in consideration of the payment of those sums of money to be paid by the Buyer hereunder, not to reestablish or in any manner become interested, directly or indirectly, in any LP-Gas business within twenty-five (25) miles of Beaumont, Texas, within five (5) years from the date hereof without the express consent of Northern Propane Gas Company.

IN WITNESS WHEREOF, the parties have executed this Agreement this *1st* day of *August*, 1964.

"SELLER"

*Economy Gas & Supply Co.*

/S/ MIKE COLE

*President*

"Buyer"

NORTHERN PROPANE GAS COMPANY

/S/ M. V. STAFFORD

the Restatement of the Law of Agency. Subdivision (1) of that section provides in substance that if it appears *unambiguously* in a contract that a party who executes a contract as an agent is or is not a party to the contract, extrinsic evidence is not admissible to show a contrary intent, except for the purpose of reforming the contract. On the other hand, subdivision (2) permits extrinsic evidence where "there is no unambiguous expression of an intention." [4] These not surprising principles find general acceptance in Texas and elsewhere.[5] These principles, Northern asserts, have been given application by the Texas Courts in cases [6] which call for a reversal here.

The problem under this boiler plate contract boils down to the simple question of whether there is really any doubt on the face of this contract that the party sought to be bound by the covenant not to compete (paragraph 4) was other than the admitted corporate transferor. To overcome the surface tension against extrinsic evidence stress is laid, not on the obligation in dispute (paragraph 4), but rather it is directed toward paragraph 3 covering a matter nowhere in dispute. Thus Northern insists that where, in the warranty of title and ownership, paragraph 3 speaks in terms of "Seller, for himself and for his heirs, successors and assigns, * * *" this indicates either as a matter of law that it was the purpose of the corporate agent to bind himself in his individual capacity or at least to raise a substantial question of fact on which extrinsic evidence would be admissible.[7]

4. Section 323, Restatement of the Law of Agencies, Subdivision (2):
"If the fact of agency appears in an integrated contract * * *, and there is no unambiguous expression of an intention either to make the agent a party thereto or not to make him a party thereto, extrinsic evidence can be introduced to show the intention of the parties."

5. See, e. g., 2 Tex.Jur.2d Agency § 156 (1959):
"Where the promise of the agent, by which he is sought to be held liable, is in writing, its construction and effect are ordinarily questions of law that must be resolved by the court. Moreover, where the promise is of such a character that only one legal inference can be drawn therefrom, it is also a question of law for the court. In many instances, however, there is a conflict in the evidence as to the nature and meaning of the conduct or terminology of the parties, a question of fact for the jury arises. Such a question, of course, must be determined from a consideration of all of the circumstances of the case. In any event, the purpose of the law is to ascertain the intent of the parties."
See also 14 Tex.Jur.2d Corporations § 366 (1960):
"Any agent, including an officer of a corporation, may assume personal responsibility for a corporate transaction, either by adding his responsibility to that of his corporate principal or by tendering his own responsibility for that of the principal. * * * The assumption of liability may be either express or inferred from the circumstances."

6. Northern stresses: Marx v. Luling Co-op. Ass'n, 1897, 17 Tex.Civ.App. 408, 43 S.W. 596, error denied; Southern Badge Co. v. Smith, Tex.Civ.App., 1911, 141 S.W. 185, error denied; First State Bank v. Power, Tex.Civ.App., 1914, 166 S.W. 382, no writ hist.

7. Once sufficient uncertainty on the face of the contract is established Northern urges two principal pieces of extrinsic evidence pointing toward assumption of personal liability by Mike Cole. The first is the letter proposal July 24, 1964, on the stationery of Economy Gas & Supply signed by Mike Cole, President, addressed to Northern in which the first person is repeatedly used (e. g., "I will sell * * *" and "I will sign a non-competitive agreement" and "I will furnish a resolution from my Board of Directors authorizing me to sell * * *"). Second, Stafford's pre-trial deposition quoting Cole as saying "I will sign any kind of non-competitive agreement, I have no intention of going back in business."
Opposing the latter the transferor emphasizes these critical admissions by Stafford:
"Q. And Mike Cole signed in his capacity as President of Economy Gas & Supply Co.?
"A. I assume so.
"Q. Did you ask him to sign in any other capacity?
"A. No, sir.

But to us this asserted ambiguity of paragraph 3 is but a ripple, considering that it is uncontradicted that Northern knew the business being acquired was conducted in the form of a corporation, which the formal contract (note 3 supra) very precisely reflected. The contract gave its own definition of "Seller." Typed into the form contract was the corporate name "Economy Gas & Supply Co." It was this concern, and no other that the contract declared was "(hereinafter referred to as 'Seller')." That this was no inadvertent slip of the typist's finger is reflected further by the repetition of the corporate title "Economy Gas & Supply Co." immediately below the contract term "Seller" in the signature clause. And to cap it all there was typed in under the line for signature the significant corporate title, "President." Moreover, although one can imagine that this was wholly accidental and just one of the perils that comes from form agreements that reflect the likelihood that the first and only time the writing came close to a lawyer was in the litigation seeking to enforce or defend it, when Northern intended to depart from the structured definition of "Seller" it did so in precise terms by adding, for example, "for him-

self and for his heirs, successors and assigns" in paragraph 3. Elsewhere, in paragraph 1, paragraph 2, and paragraph 4 the contract definition of "Seller" was thought to be adequate. Structured as the contract was with the purposeful tyepwritten insertion of the corporate name and the corporate title of the signatory agent [8] there is no basis whatsoever for holding that there was either an intention to hold Mike Cole personally responsible or any basis for any genuine doubt thereon. This makes it unnecessary for us to discuss in detail the cases stressed by Northern, none of which require a different result here.

Only a tag end remains, Langford v. Shamburger, 5 Cir., 1968, 392 F.2d 939 (1968). Northern insists that Mike Cole is bound personally because he is the alter ego of the wholly-owned corporation which may be disregarded. No possible showing of a question of fact under accepted Texas principles appears in this record to rescue Northern from its undeniable knowledge that the enterprise was in a corporate form being transferred to it in the corporate name through a corporate officer.[9]

Affirmed.

---

"Q. Did you at that time and at the time it was signed request him to sign it individually as well as President?
"A. No I did not."

8. The transferor emphasizes such cases as: Bartlett & Co., Grain v. Merchants Co., 5 Cir., 1963, 323 F.2d 501, 7 A.L.R.3d 541; J. K. Hughes Oil Co. v. Mayflower Ins. Co., Tex.Civ.App., 1946, 193 S.W.2d 971, writ ref'd, on the controlling significance of typed insertions in written, printed contract forms.

9. The Transferor stresses: Pace Corp. v. Jackson, 1955, 155 Tex. 179, 284 S.W.2d 340; Commonwealth of Massachusetts v. Davis, 1942, 140 Tex. 398, 168 S.W.2d 216; Wells v. Hiskett, Tex.Civ.App., 1965, 288 S.W.2d 257, writ ref'd n. r. e.; Associated Dev. Corp. v. Air Control Prods. Inc., Tex.Civ.App., 1965, 392 S.W.2d 542, writ ref'd n. r. e.; Atomic Fuel Extraction Corp. v. Slick, Tex.Civ.App., 1965, 386 S.W.2d 180, writ ref'd n. r. e., 1966, 403 S.W.2d 784; which emphasize the significance of knowledge that the entity involved was a corporation.