OWENS et al. v. WILLIAM H. BANKS
WAREHOUSES, Inc.

No. 14043.

United States Court of Appeals
Fifth Circuit.

March 11, 1953.

Rehearing Denied April 8, 1953.

F. P. Granberry and Earle P. Adams, Crockett, Tex., W. Dewey Lawrence, and Lawrence & Lawrence, Tyler, Tex., Adams & Morgan and Kennedy & Granberry, Crockett, Tex., for appellants.

Thos. B. Ramey, Tyler, Tex., Lord, Bissell & Kadyk, Chicago, Ill., Ramey, Calhoun, Brelsford & Hull, Tyler, Tex., of counsel, for appellee.

Before HOLMES, RUSSELL and STRUM, Circuit Judges.

RUSSELL, Circuit Judge.

On July 2, 1947, William H. Banks Warehouses, Inc. and Mallory Canning Company, Inc., of Grapeland, Texas, entered into a contract, under which they operated, as described by the Court[1] below, in the following manner:

"Usually merchandise is pledged either by chattel mortgage or warehouse receipt. Normally, in order to get a bonded warehouse receipt, the merchandise is stored in a public warehouse. This is expensive, so Banks, a warehousing concern, usually takes a lease on the building where the merchandise is stored, takes possession of the building, posts signs and notices that it is a bonded warehouse and is-

1. This action was tried to a jury before the late Judge Randolph Bryant, who died April 24, 1951. The verdict was for appellants and judgment was entered consistent therewith. At the time of Judge Bryant's death, appellee had timely filed, and there were pending, motions to set aside the verdict and judgment, and to enter judgment for appellee; or, in the alternative, to grant a new trial. After Judge Bryant's demise, these motions were presented to Judge James V. Allred. After hearing, and upon consideration of the transcript of the record, Judge Allred for reasons stated in his memorandum opinion, entered judgment non obstante veredicto, amended and reformed the former judgment accordingly and denied the motion for new trial.

sues warehouse receipts on the merchandise.

"Banks' field warehouse-man or custodian usually is an employee of the customer storing the merchandise. When merchandise is tendered, applications for warehouse receipts are signed in triplicate by the custodian. One copy is kept by him, the others going to the bank lending money on the merchandise, the bank, in turn, sending the third copy to Banks at its home office in Chicago. Upon receipt of the application, certifying that the goods are stored in the warehouse, Banks issues its warehouse receipts to the lending bank and the customer storing the merchandise. When the lending bank is satisfied and certifies that the merchandise may be taken out of storage, it is released on forms, signed by the custodian, a copy of which goes to Banks' Chicago office."

Prior to July 2, 1947, appellee and Mallory Canning Company, a partnership, had operated under a similar agreement. The agreement of July 2, 1947, was entered into when it became known to appellee that the business had been incorporated. In February, 1946, Mallory Canning Company advised appellee that the employee who had been appointed custodian under the former field warehousing agreement was terminating her employment, and requested that Golden Owens, another of its employees, be appointed custodian. Owens was appointed custodian by appellee, and on or about February 7, 1946, accepted custody of the merchandise then contained in the warehouses for which warehouse receipts had been issued, "Subject to release instructions from William H. Banks Warehouses, Inc."

Pursuant to the warehousing agreement of July 2, 1947, a representative of appellee, together with Owens, made an inspection and inventory of the warehouses and determined that all merchandise for which warehouse receipts were outstanding was on hand and in good condition. Owens was continued as custodian and was told that his duties would be precisely as they had been in the past, except that the can-

ning company was then being operated as a corporation instead of as a partnership. On the same date, July 2, 1947, Owens, as principal, and Mallory Canning Company, Inc.; W. F. Mallory, president; Esther Lee Mallory, vice-president; and Leon Anderson, secretary-treasurer, as sureties, executed a bond obligating themselves to reimburse appellee for any loss or damage which it might sustain by reason of the failure, negligence or refusal of Owens to well and faithfully perform his duties as an employee of appellee.

In the latter part of 1947, it was discovered that there was a substantial shortage of merchandise for which there were warehouse receipts outstanding. The holders of the warehouse receipts brought suit against appellee to recover the value represented by them. These claims were adjusted, compromised and settled and the action was dismissed with prejudice. Thereafter, this suit was instituted against Owens, Mallory Canning Company, Inc., and the three corporate officers who signed the bond to recover the loss occasioned by the shortage, together with costs and attorney's fees necessitated by the prior litigation.

The corporate defendant and also Esther Lee Mallory and W. F. Mallory failed to appear and answer the complaint. Consequently, at the close of the evidence the Court, having determined that a *prima facie* case had been established, directed a verdict against them in the amount sued for. The defense plead and relied upon by Owens and Anderson, appellants, was that appellee, by its negligence, rendered the employment contract impossible of performance, and thereby discharged them from all liability on the bond. Anderson interposed the additional defense that he signed the bond in his capacity as an officer of the corporation, and, therefore, was not personally liable for any default of Owens.

There is no question of Owens' failure to well and faithfully perform the duties of his employment. Indeed, he made no attempt to ascertain the nature of his duties or to perform those which he did know, or should have known, he was obligated to

perform. In complete disregard of the provisions of the bond, he made no effort to ascertain and correctly certify as to the actual receipt of merchandise or to exercise control over the removal of merchandise from the warehouses. Notwithstanding the fact that he certified as to the correctness of each application for warehouse receipt issued by Mallory Canning Company, Inc., in most instances he failed to make a count of the merchandise placed in the warehouses and in some instances he made no effort to determine whether such merchandise was actually in existence. With respect to the release of merchandise from the warehouses, Owens made little, if any, effort to protect appellee's interest. In short, Owens made no pretense of performing the duties of a custodian, but perfunctorily certified to the receipt of merchandise and inexcusably neglected to comply with the provisions of the bond.

It is urged by appellants, however, that Owens' failure to properly perform his duties as custodian was caused by appellee's ngligence, and that such negligence was the proximate cause of the loss. Specifically, appellants contend that the failure of appellee to properly instruct Owens as to his duties; to deliver to him exclusive possession of the warehouse keys; and to furnish a safe place to store the merchandise, constituted a breach of the employment contract which rendered it impossible of performance.

■■■■ It is recognized as a general principle that if one party to a contract wrongfully prevents the other party from performance, or makes it impossible for him to perform his obligations under the contract, the offending party will not be permitted to recover damages for non-performance and thereby take advantage of his own wrongful acts. But this rule is not applicable in this case. Owens had been employed as custodian for over sixteen months when the bond sued on was executed. All of the conditions which are now asserted to avoid the contract were well known to him at the time it was executed. If he was not advised of his duties and obligations under the contract, or

if he was in doubt as to the significance of the terms of the bond, it was his responsibility to acquaint himself with them. It is no defense to say that he was unable to cope with the problems arising from the employment or that he was not equipped to perform the duties which he knowingly assumed. Moreover, at no time did he attempt to rectify the conditions or to advise appellee of his dissatisfaction, if any, with the arrangement. He willingly accepted the benefits of the employment, and now, after the loss has occurred, can not effectively urge in avoidance of his own negligence that the conditions which existed at the time he voluntarily assumed the obligation rendered it impossible of performance. Such an attempted exoneration will avail neither the principal nor the surety upon the bond.

Anderson's claim that he is not personally liable on the custodian's bond is predicated upon his testimony that he did not know at the time he signed the instrument that he was signing in any capacity other than as secretary of the corporation. This testimony is not sufficient to contradict and destroy the specific terms of the bond. The instrument designates Owens as principal and Mallory Canning Company, Inc., W. F. Mallory, Esther Lee Mallory and Leon Anderson as sureties. It is signed on the right, or customary location on such documents, by Owens, as principal, and W. F. Mallory, as president, on behalf of the corporation. On the left of the instrument, Anderson attested the corporate signature of Mallory, signing his name as secretary. Below the corporate signature appears the signatures of W. F. Mallory, Leon Anderson and Esther Lee Mallory all unaccompanied by any designation whatever. To the right of these three signatures there is superimposed over the word "SEAL", which appears on a line after each of the signatures, the seal of the corporation. These seals, three in number, overlap one another. The corporate seal is also affixed to the left by the attestation of Anderson as secretary. In the body of the instrument, following the name of each of the corporate officers, is typewritten the office

which he or she held. Anderson's name is followed by the abbreviation "Sec.-Treas."

It is contended that since the abbreviation designating Anderson's office appears in the body of the instrument and is not repeated after his signature, and since the corporate seals are affixed to the instrument in the manner described, it is ambiguous and parol evidence is admissible to explain, or establish, in what capacity Anderson intended to be bound by the contract. But the designation is only *descriptio personae*. The instrument, considered as a whole, is susceptible to but one construction and is not ambiguous. The fact that the corporate seals were indiscriminately affixed to the document and the corporate offices held by the signatories thereto are designated in the body of the instrument does not destroy the effect of the obligation and defeat the express terms of the bond. Marx v. Luling Coop. Ass'n, 17 Tex.Civ. 408, 43 S.W. 596. If the parties had intended that the officers sign the bond in their capacity as officers, this could easily have been accomplished by the insertion of the word "as" between their names and the name of the office which they held. Since the nature of the obligation assumed by the parties is clearly evident from the language of the instrument, extrinsic evidence is not admissible to explain or alter its effect. Furthermore, Anderson does not contend that there was any fraud, collusion or mutual mistake with reference to his signing the bond. He merely testified that he was not told that he was signing it in his individual capacity and did not understand that he would become personally liable. This testimony, if admissible, would not be sufficient to relieve him of the liability which he voluntarily assumed. Marx v. Luling Coop. Ass'n, supra. Cf. First State Bank of Denton v. Smoot-Curtis Co., Tex.Civ. App., 121 S.W.2d 667.

The foundation of a fact issue sufficient to uphold the verdict of the jury is not here present. This absence, fatal to appellants' claim of error, the trial Court correctly perceived and adjudged.

Judgment affirmed.