TAYLOR–MADE HOSE,
INC., Appellant,

v.

Lynne WILKERSON, Appellee.

No. 04–97–01025–CV.

Court of Appeals of Texas,
San Antonio.

April 12, 2000.

Randy Gathany, David W. Rogers, Law Offices of Dave Rogers, Inc., San Antonio, for appellant.

Judith Ramsey Saldana, Jones, Kurth & Andrews, San Antonio, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

## ON MOTION FOR RECONSIDERATION EN BANC

Opinion by: SARAH B. DUNCAN, Justice.

Taylor–Made Hose, Inc. appeals the trial court's summary judgment against it in its collection suit against Lynne Wilkerson, as guarantor for North American Transit, Inc. On original submission, the panel affirmed the trial court's judgment. However, a majority of the members of this court granted Taylor–Made Hose's motion for reconsideration en banc, and we now withdraw the panel opinions, reverse the trial court's judgment, and remand the cause for further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

North American Transit, Inc. applied to Taylor–Made Hose, Inc. for a credit account. The form upon which the application was made is reproduced below in full:

**TAYLOR-MADE HOSE, INC.**

5914 Zangs
San Antonio, Texas 78238

210/520-4673
Fax 210/681-3946

BUSINESS NAME: *NORTH AMERICAN TRANSIT, INC.*
TYPE OF BUSINESS: *Manufacturer - Transit Buses*
STREET ADDRESS: *109 Lexington, Suite 200*
CITY: *San Antonio* STATE: *Texas* ZIP: *78205*
BILLING/MAILING ADDRESS: *Same*
CITY: STATE: ZIP:
PHONE NUMBER: *(210) 225-7573* FAX NUMBER: *(210) 224-0190*
CORPORATION: ✓ PARTNERSHIP: OTHER:
OFFICERS OR PARTNERS:
*Wayne Cook* TITLE: *President*
*Lynne Wilkerson* TITLE: *Secretary/Treasurer*
TITLE:
HOW LONG IN BUSINESS: *1 yr.* P.O. #'S REQUIRED: *Yes*
CONTACT PERSON REGARDING BILLING: *Diana Esquivel*
CONTACT PERSON REGARDING PURCHASING: *Lynne Wilkerson*
PARENT COMPANY (if branch or subsidiary)
TAXABLE: YES. NO - IF NOT PLEASE FILL OUT THE FORM ATTACHED.
REFERENCES:
BANK NAME: *First American Bank*
ADDRESS: *3111 Briarcrest Dr.* CITY/STATE: *Bryan, TX* ZIP: *77802*
OFFICER: *Ivan Olson* ACCOUNT #: *006 7393*
COMPANY NAME: *Ridewell Corporation*
ADDRESS: *Po Box 4586* CITY/STATE: *Springfield, MO* ZIP: *65808*
PHONE #: *(417) 833-4565* ACCOUNT #:
COMPANY NAME: *Freston International*
ADDRESS: *4403 Riverside Dr. S* CITY/STATE: *Chino, CA* ZIP: *91710*
PHONE #: *(909) 902-1003* ACCOUNT #:
COMPANY NAME: *Felco Office Products*
ADDRESS: *1560 Cable Ranch Rd.* CITY/STATE: *San Antonio, TX* ZIP: *78245*
PHONE #: *(210) 673-7000* ACCOUNT #: *673-9163 Sandy Ogden*

With the signature below I accept the following TERMS AND CONDITIONS of a Credit Account:
1. All invoices are payable in Bexar County, San Antonio, Texas. Net 30 days.
2. We agree to pay a service charge on any unpaid balance of 1¼% per month or the highest rate permitted by law.
3. I, personally agree to pay all invoices and cost of collection including, but not limited to collection agency fees, court costs, and reasonable attorney's fees on any amount remaining unpaid after 90 days.

OFFICERS NAME: *Lynne Wilkerson* TITLE: *Vice-President*
SIGNATURE OF OFFICER: *Lynne Wilkerson* DATE: *7-21-94*

After North American Transit failed to pay its account and filed a bankruptcy proceeding, Taylor–Made Hose filed a sworn account suit against "Lynn Wilker-

son, as Guarantor for, North American Transit, Inc." Taylor–Made Hose alleged that "at the special instance and request of Defendant [it] sold and delivered to Defendant as buyer, in the regular course of business, the goods, wares, and merchandise, and performed the services shown upon [the invoices attached as Exhibit A]," and "Defendant is indebted to [Taylor–Made Hose] in the total sum of $22,790.56, according to such systematic accounts contained in such Exhibit."

Wilkerson answered, denying liability in the capacity in which she was sued. Wilkerson further denied executing a guaranty in her individual capacity and alleged "each and every item in the account is not just and true, and all just and lawful offsets, payments and credits have not been allowed." Wilkerson pled other defenses as well, including that the debt had been discharged in bankruptcy, failure of consideration, payment, mistake, material alteration of the contract, the absence of a contract, and ambiguity. Wilkerson supported her amended answer with her affidavit.

Several months after answering, Wilkerson filed a motion for summary judgment pursuant to Rule 166a, Tex.R. Civ. P. In her motion, Wilkerson alleged Taylor–Made Hose had "**no evidence** that:

(1) this agreement is indeed a guaranty;

(2) that Lynne Wilkerson signed in her individual capacity;

(3) that Lynne Wilkerson is liable individually for any of this debt; and

(4) Taylor Made Hose, Inc. knew clearly that it was dealing with a corporation, not an individual."

*See* Tex.R. Civ. P. 166a(i). Wilkerson also alleged there was no evidence of a contract enforceable against her individually because there was no writing signed by her in her individual capacity and, in any event, the debt had been discharged in North American Transit's bankruptcy. Wilkerson supported her motion with her affidavit, to which were attached copies of

certain correspondence and the credit agreement, which Wilkerson stated "appear[ed] to be a true and correct copy of the credit application signed in my capacity as Vice–President of North American Transit, Inc."

Taylor–Made Hose responded that the credit agreement itself established Wilkerson's liability. In its supporting affidavit, Taylor–Made Hose alleged it extended credit to North American Transit "based upon the personal guarantee of Lynne Wilkerson. If Ms. Wilkerson had not been willing to sign the personal guarantee then the company would not have been willing to extend the credit." Taylor–Made Hose supported its response with the affidavit of Don Taylor, President and CEO of Taylor–Made Hose, a copy of the credit application, a copy of its petition, together with the attached invoices, and a copy of Wilkerson's answers. After Wilkerson objected to Taylor–Made Hose's supporting proof, it filed an amended affidavit. Wilkerson objected to this affidavit as well, but there is no indication in the record the trial court ruled on any of her objections. Ultimately, the trial court granted Wilkerson's motion, without stating a ground for its ruling, and rendered a take-nothing judgment against Taylor–Made Hose.

## STANDARD AND SCOPE OF REVIEW

■ "After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more [specified] essential elements of a claim or defense on which the adverse party would have the burden of proof at trial." Tex.R. Civ. P. 166a(i). "The [trial] court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact." *Id.*

■ On appeal, we review a summary judgment de novo. *Valores Corporativos, S.A. de C.V. v. McLane Co., Inc.,* 945 S.W.2d 160, 162 (Tex.App.—San Antonio 1997, writ denied). Accordingly, we will

uphold a traditional summary judgment only if the summary judgment record establishes the absence of a genuine issue of material fact, and the movant is entitled to summary judgment on a ground set forth in the motion. *Id.* And we will uphold a no-evidence summary judgment only if the summary judgment record reveals no evidence of the challenged element, *i.e.*, "(a) a complete absence of evidence [as to the challenged element]; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove [the challenged element]; (c) the evidence offered to prove [the challenged element] is no more than a mere scintilla; [or] (d) the evidence establishes conclusively the opposite of the [challenged element]." Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L.REV. 361, 362–63 (1960). In deciding whether the summary judgment record raises a genuine issue of material fact, we view as true all evidence favorable to the respondent. *Valores*, 945 S.W.2d at 162.

### DISCUSSION

■ Taylor–Made Hose argues the credit application "unambiguously establishes Wilkerson to be a personal guarantor of North American's debt to Taylor–Made." We agree.

■ A party's signature renders her individually liable for the debt of another as a matter of law "[i]f the instrument, on its face, is clearly that of the person signing it." *Marx v. Luling Co–op. Ass'n*, 17 Tex.Civ.App. 408, 43 S.W. 596, 600 (1897, writ ref'd).[1] This inquiry presents "a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex.1983). "If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambigu-

ous and the court will construe [it] as a matter of law." *Id.* at 393. A contract is ambiguous only "when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." *Id.*

■ As stated in the credit application attached to her affidavit, Lynne Wilkerson "personally agree[d] to pay all invoices and cost of collection ... on any amount remaining unpaid after 90 days" on North American Transit's open account with Taylor–Made Hose. This agreement is not in any respect ambiguous. By agreeing to "personally ... pay" North American Transit's delinquent account, Wilkerson made herself personally liable for the corporation's debt. *See* TEX. BUS. & COM.CODE ANN. § 3.402(b) (Vernon Supp.1998); *Austin Hardwoods, Inc. v. Vanden Berghe*, 917 S.W.2d 320, 323 (Tex.App.—El Paso 1995, writ denied); *Eubank v. First National Bank of Bellville*, 814 S.W.2d 130, 133–34 (Tex.App.—Corpus Christi 1991, no writ); *American Petrofina Co. v. Bryan*, 519 S.W.2d 484, 486–87 (Tex.Civ.App.—El Paso 1975, no writ); *Marx*, 43 S.W. at 600; *accord Owens v. William H. Banks Warehouses, Inc.*, 202 F.2d 689, 693 (5th Cir.) (applying Texas law), *cert. denied*, 346 U.S. 813, 74 S.Ct. 22, 98 L.Ed. 341 (1953). And Wilkerson would remain personally liable on the corporate debt even if the corporation's liability were discharged in bankruptcy. *Austin Hardwoods*, 917 S.W.2d at 324–25. The trial court thus erred in granting Wilkerson's motion for summary judgment.

### CONCLUSION

Because the credit application attached to Wilkerson's affidavit establishes she is personally liable for North American Transit's debt to Taylor–Made Hose, and this liability is, as a matter of law, unaffected by North American Transit's discharge in bankruptcy, the trial court erred in grant-

---

1. Although the application for a writ of error was refused in *Marx*, it is a pre–1927 decision and therefore not binding on this court. TEXAS RULES OF FORM 84 (9th ed.1997).

ing Wilkerson's motion for summary judgment. However, because Taylor–Made Hose did not file a cross-motion, we are unable to render judgment in its favor. We therefore reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.

Dissenting opinion by: ALMA L. LÓPEZ, Justice, joined by PHIL HARDBERGER, Chief Justice.

Dissenting without opinion by: CATHERINE STONE, Justice.

LÓPEZ, Justice, dissenting.

In a strikingly bold stroke, the majority greatly expands the law of guaranty to favor any poorly-worded attempt by a business entity to hold the employee or officer of a customer business personally liable for credit extended to the company. After years of holding to the contrary, the law in Texas now has suddenly swung from favoring the obligor, to favoring the obligee.

Taylor–Made Hose appeals a take–nothing judgment based on a no–evidence motion for summary judgment Wilkerson filed pursuant to Texas Rule of Civil Procedure 166a(i). The majority opinion of August 31, 1998 affirmed the trial court's judgment. On rehearing *en banc*, the majority reverses the no–evidence summary judgment favoring Wilkerson and goes further to find that she is personally liable for the debt of her former employer. I respectfully dissent.

### *Factual and Procedural Background*

Taylor–Made Hose seeks to impose personal liability on Wilkerson for a debt incurred as a result of an application for credit on behalf of North American Transit, Inc. The credit application form provided by Taylor–Made Hose required general information on the business and asked for its bank and other business references. At the bottom of the one-page application, the language which is at the center of this dispute stated:

> With the signature below I accept the following TERMS AND CONDITIONS of a Credit Account: ...

> 3. I, personally agree to pay all invoices and cost of collection including, but not limited to collection agency fees, court costs, and reasonable attorney's fees on any amount remaining unpaid after 90 days.

> OFFICER'S NAME: Lynne Wilkerson
> TITLE: Vice–President
> SIGNATURE OF OFFICER: /s/ Lynne Wilkerson DATE: 7–21–94

Taylor–Made Hose alleges that, on the basis of this credit application and "guarantee," it extended credit to North American Transit, Inc. and, from December 1995 through January 1996, delivered merchandise totaling $22,790.56. In April 1997, Taylor–Made sued "Lynn [sic] Wilkerson, as Guarantor for North American Transit, Inc." [1]

Wilkerson filed a verified denial that (1) she was not liable in the capacity in which she had been sued, (2) and denied the account because (a) she did not execute any guaranty in her individual capacity and (b) that all just and lawful offsets, payments and credits had not been allowed. She further pled that this debt had been discharged in bankruptcy and other defenses not relevant to this appeal.

In October 1997, Wilkerson filed a motion for summary judgment under the new no-evidence summary judgment rule. *See* Tex.R. Civ. P. 166a(i) (eff. Sept. 1, 1997). In this motion, Wilkerson asserted that Taylor–Made Hose had no evidence that (1) this agreement was a guaranty, (2) that Wilkerson signed in her individual capacity, (3) that Wilkerson is liable individually for any of this debt and, in addition, (4)

---

**1.** Although Wilkerson is named as a guarantor in the style of plaintiff's original petition, the petition itself does not contain any allegations that she is a guarantor. The petition merely describes the debt of North American Transit, Inc.

Taylor Made Hose knew that it was dealing with a corporation, not an individual.

Taylor–Made Hose filed a response to the motion for summary judgment to which it attached the affidavit of its president and CEO, Don Taylor. Mr. Taylor stated:

> My company extended credit to North American Transit, Inc., based upon the personal guarantee of Lynne Wilkerson. If Ms. Wilkerson had not been willing to sign the personal guarantee then the company would not have been willing to extend the credit.... [W]e anticipated that Lynne Wilkerson would be personally responsible for these invoices.

Taylor–Made Hose also attached unverified copies of the credit application, its original petition with invoices, and the remaining pleadings on file at that time.

Wilkerson's reply to this response and separately-filed evidentiary objections asserted that Don Taylor's affidavit was not incorporated by reference into the response and, therefore, could not be considered as proof. Further, the affidavit made no reference to any attached exhibit, nor did the affidavit state that the credit application was a true and correct copy of that document. Wilkerson also objected that the Taylor affidavit failed to prove that she had signed any document in her individual capacity. Lastly, Wilkerson asserted that the invoices attached to the response fail to prove a debt due and owing for more than 90 days by Wilkerson,[2] or that all conditions precedent to a suit on a sworn account had been met. None of these attachments were in proper summary judgment evidence form. She further objected with specificity to all the language in the Taylor affidavit concerning the intent of the parties as constituting self-serving statements of an interested party that were not readily controvertible, contained hearsay, and were inadmissable conclusions.

On October 9, 1997, the trial court granted Taylor–Made Hose a continuance to permit it to file an amended affidavit by Taylor. Taylor–Made Hose amended and filed the Taylor affidavit with attached invoices and the credit application on October 10, 1997. Wilkerson filed written objections to the amended affidavit on October 16. On October 17, 1997 the trial court heard argument and granted summary judgment in favor of Wilkerson. Taylor–Made timely filed a motion for new trial and a notice of appeal. The motion for new trial was heard and denied on January 8, 1998.

### The Standard of Review

As this court stated previously, *Moore v. K Mart Corporation*, 981 S.W.2d 266, 269 (Tex.App.—San Antonio 1998, writ denied): "A no-evidence summary judgment is essentially a pretrial directed verdict," and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. We review the evidence in the light most favorable to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. "A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *See Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997), *cert. denied*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998).

Moreover, Rule 166a(i) states "[t]he court must grant the motion [for summary judgment] unless the respondent produces summary judgment evidence raising a genuine issue of material fact." Under the federal counterpart to our rule, a fact is

2. *See* n.2, supra.

"material" only if it affects the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Such a determination can only be made by reliance on the substantive law, and only those facts identified by the substantive law can be considered material. *Id.* A material fact is "genuine" if the evidence is such that a reasonable jury could find the fact in favor of the nonmoving party. *Id.* By the same token, if the evidence is not significantly probative, the fact issue is not genuine. *Id.; see also Lampasas v. Spring Center, Inc.*, 988 S.W.2d 428, 432 (Tex.App.-Houston [14th Dist.] 1999, no writ).

### Discussion

Appellant raises a single point of error as to whether, as a matter of law, the signature of a corporate officer following the language on the corporation's credit application, "I personally agree to pay all invoices and costs of collection ... on any amount remaining unpaid after 90 days," is sufficient to constitute a personal guaranty of the corporation's debts.

It is well settled that no single provision in an instrument, taken alone, will be given controlling effect. Rather, all provisions must be considered with reference to the whole instrument. *See Coker v. Coker*, 650 S.W.2d 391 (Tex.1983). In addition, a guarantor occupies a favored position in the law which requires this court to construe a guaranty strictly in favor of the guarantor. *See McKnight v. Virginia Mirror Co.*, 463 S.W.2d 428, 430 (Tex. 1971).

In arguing that the quoted language is sufficient to hold the signer accountable, appellant relies on a case from the El Paso Court of Appeals bearing remarkably similar facts. *See Austin Hardwoods, Inc. v. Vanden Berghe*, 917 S.W.2d 320 (Tex. App.—El Paso 1995, writ denied). In *Austin Hardwoods*, the court found that a multi-purpose credit application clearly evidenced a corporate application personally

guaranteed by the individual signing the application. *See id.* at 323. The exact language accomplishing this feat appeared immediately above the signature line, and stated: "If a corporation, the undersigned personally guarantees the payment of this account in his individual capacity." *Id.* Key words in the *Austin Hardwoods* credit application that are missing from Taylor–Made Hose's credit application are the words "guaranty" and "individual capacity." Moreover, this sentence unambiguously distinguishes the corporation from the guarantor. *See also Eubank v. First National Bank of Bellville*, 814 S.W.2d 130, 133 (Tex.App.-Corpus Christi 1991, no writ)(language of guaranty agreement clearly established borrower, creditor, and guarantor, in his personal capacity).

Appellant also seeks support in *Gulf & Basco Co. v. Buchanan*, which upheld a trial court finding that a corporate officer was not liable when he signed his name to a "guaranty agreement" without indicating his title or corporate capacity. 707 S.W.2d 655 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). During a bench trial, the court had declared the document ambiguous and admitted testimony to explain the ambiguity. The office manager for Gulf & Brasco testified that he understood Buchanan to have signed in his individual capacity. *Id.* at 658. He also stated that it was Gulf & Brasco's policy not to grant credit without a personal guarantee. *Id.* at 659. Although Gulf & Brasco requested a personal financial statement, Buchanan did not provide one and the account was apparently opened solely on the basis of corporate credit and that credit was extended for six years. *Id.* Buchanan testified that he signed in his corporate capacity and did not intend to bind himself personally to pay the corporate account. *Id.* On the basis of this conflicting testimony, the trial court found Buchanan had signed only in his corporate capacity and was not personally liable for the corporate debt. *Id.* The case does not lend support to appellant's position here

where Wilkerson clearly signed the credit application in her capacity as vice-president. The application does not even provide a signature blank for one to sign in another capacity. It only requests and provides for an "officer's" signature.

What the *Gulf & Basco* decision does point out, however, as appellant urges in its motion for rehearing, is that although both parties have argued that the language at issue is unambiguous, both sides have presented summary judgment evidence that impliedly raises the issue of ambiguity. Whether a document is ambiguous is a question of law. *See id.* at 657; *Tuthill v. Southwestern Public Service Co.*, 614 S.W.2d 205, 211 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.). Moreover, where ambiguity is raised for the first time on appeal, construction of the contract is a question of law for the court. *See Praeger v. Wilson*, 721 S.W.2d 597, 600 (Tex.App.-Fort Worth 1986, writ ref'd n.r.e.); *Community Dev. Ser. v. Replacement Parts Mfg.*, 679 S.W.2d 721, 724 (Tex.App.-Houston [1st Dist.] 1984, no writ): *Sale v. Contran Corp.*, 486 S.W.2d 161, 165 (Tex.Civ.App.-Dallas 1972, writ ref'd n.r.e.). An instrument is not ambiguous simply because the parties disagree over its interpretation. *See Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 727 (Tex.1981). In this case, neither party claimed that the credit application is ambiguous while before the trial court. Appellant raises ambiguity for the first time in its motion for rehearing. Therefore, the court may construe the contract as a matter of law. *See Praeger*, 721 S.W.2d at 600.

In doing so, however, we are obligated to give effect to the objective intent of the parties as expressed or apparent in the writing. *See Westwind Exploration, Inc. v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 382 (Tex.1985); *Praeger*, 721 S.W.2d at 600. To review the credit agreement for the purpose of giving effect to the true intention of both parties to the agreement, we must look at the entire agreement. *See Gulf & Basco*, 707 S.W.2d at 657. The body of the credit agreement in this case seeks information on the business itself and, in particular, seeks bank references only for the corporate entity, not for the officer who signs the application. Unlike the guaranty agreement reviewed in *Austin Hardwoods*, which was clearly intended as a multi-purpose form that could be used for corporations, partnerships, or individual applicants, Taylor–Made's form is tailored for business entities. The applicant can check the type of entity applying, and in this case the blank after "corporation" is checked. The names of its officers, its bank, and other credit references of the corporation are provided as required. No credit information is requested on the officer who is to sign the application. Only her title is requested.

Looking beyond the document itself to the circumstances surrounding its execution, *see Praeger*, 721 S.W.2d at 600–01, we turn to the summary judgment evidence.[3] Appellant's key evidence concerning the intent of Taylor–Made Hose to bind a corporate officer in her individual capacity was offered through the amended affidavit of Don Taylor.[4] Wilkerson specifically and

---

**3.** As this court has noted in the past, a summary judgment in a contract case where extrinsic evidence has been admitted is generally improper. However, undisputed extrinsic evidence may resolve the ambiguity as a matter of law. *See Winslow v. Acker,* 781 S.W.2d 322, 325 (Tex.App.-San Antonio 1989, writ denied).

**4.** "The document attached ... is a true and accurate copy of the credit agreement wherein Lynne Wilkerson agrees to personally pay all invoices from Taylor Made Hose, Inc. to

North American Transit, Inc., in addition to any costs of collection." [objection: hearsay, inadmissible conclusion and legal conclusion, violation of the Best Evidence Rule, and unsubstantiated opinion].

"As President and CEO of Taylor Made Hose, Inc., I am aware of the criteria relied upon by this corporation in extending credit to buyers such as North American Transit, Inc." [objection: not readily controvertible].

"My company extended credit to North American Transit, Inc., based upon the personal guarantee of Lynne Wilkerson.... If

strenuously objected in writing to all statements tending to establish an intent to hold Wilkerson personally liable as a guarantor. Although the record contains no written order ruling on the objections to plaintiff's amended affidavit in response to the motion for summary judgment, the court's granting of a summary judgment creates an inference that the objections were sustained.[5] *See* Tex.R.App. P. 33.1(a)(2)(A); *Salinas v. Rafati*, 948 S.W.2d 286, 288 (Tex.1997); *Frazier v. Yu*, 987 S.W.2d 607, 610 (Tex.App.-Fort Worth 1999, writ denied).

Subsection 2(A) is a substantive revision to Rule 33.1(a)'s predecessor, Rule 52. This addition relaxes the former requirement of an express ruling, and is consistent with case law holding that an appellate court can presume the trial court sustained or overruled a motion or an objection in certain circumstances. *See Salinas*, 948 S.W.2d at 288 (finding that granting of motion to disregard "automatically" denied motion for judgment on verdict); *Acord v. General Motors Corp.*, 669 S.W.2d 111, 114 (Tex.1984) (presuming objection to charge was overruled because trial court did not alter objection to language); John Hill Cayce, Jr. et al., *Civil Appeals in Texas: Practicing Under the New Rules of Appellate Procedure*, 49 Baylor L. Rev. 867, 874 n. 10 (1997) (discussing new Rule 33.1(a)(2)(A)); *Significant Features of the New Texas Rules of Appellate Procedure*, Guide to The New Texas Rules of Appellate Procedure 1997 (State Bar of Texas Appellate Section) at 10 (stating "[a] signed, separate order is not required, as long as the record otherwise shows that the ruling was made"). Thus, in some instances, a party need no longer get an express rul-

ing on an objection to preserve error if the ruling is implicit in the court's findings. *See, e.g., Blum v. Julian*, 977 S.W.2d 819, 823 (Tex.App.—Fort Worth 1998, no writ) (granting summary judgment implies overruling of non-movant's objections to affidavit). The effect of the court's implicit ruling is that Taylor–Made Hose has presented no evidence on the issue of intent to raise a genuine issue of material fact. Because this is a no-evidence ruling, if the trial "court is barred by rules of law or evidence from giving weight to the only evidence to prove an essential element, summary judgment is proper." *See* Tex.R.App. P. 166a(i) & cmt.; *Havner*, 953 S.W.2d at 711.

Furthermore, Taylor–Made Hose has waived the right to complain about the court's ruling on its summary judgment evidence. "Where evidence has been held to be inadmissible and that holding has not been challenged on appeal, this court cannot consider the excluded evidence." *See Frazier*, 987 S.W.2d at 610; *see also English v. Prudential Ins. Co.*, 928 S.W.2d 702, 706 (Tex.App.—Houston [1st Dist.] 1996, writ denied); *Rhodes v. Interfirst Bank Fort Worth, N.A.*, 719 S.W.2d 263, 265 (Tex.App.-Fort Worth 1986, no writ); *Talbott v. Hogg*, 298 S.W.2d 883, 889 (Tex.Civ. App.-Amarillo 1957, writ dism'd). The only evidence of a party's intent is the unchallenged affidavit of Wilkerson stating that she did not sign the document in an individual capacity, she did not guarantee the debt, and did not intend to enter into such a personal agreement when she completed the application on behalf of the corporation. As an employee and vice-president of the company, she was authorized to obligate the company on the ex-

---

Ms. Wilkerson had not been willing to sign the personal guarantee then the company would not have been willing to extend the credit." [objection: not readily controvertible, legal conclusion, hearsay, unsubstantiated opinion].

"Based upon that personal guarantee, my company provided product in the amounts indicated on the invoices made the basis of

this matter and we anticipated that Lynne Wilkerson would be personally responsible for such invoices." [objection: not readily controvertible, legal conclusion, hearsay].

5. Appellant would have this rule construed differently, but cites no law supporting its contention.

tension of credit.[6] This evidence simply does not support a finding by this court that Wilkerson is personally liable for the corporation's debt on the basis of a corporate credit application.

Guaranty agreements must be strictly construed and construed against the drafter. *Thompson v. Preston State Bank,* 575 S.W.2d 312, 315 (Tex.App.-Dallas 1978, writ ref'd n.r.e.). Under the circumstances presented here, I would find the language "I, personally, agree to pay ..." followed by the signature of a corporate officer, signed only in her official capacity, insufficient to bind Wilkerson personally for the debt of the corporation. Not only is the document missing clear indicators such as "guarantee" and a signature line for the surety to sign in her individual capacity, but there is no competent summary judgment evidence of the alleged intent of Taylor–Made Hose to extend credit only in the event the debt was guaranteed by someone other than a corporate representative.

This case is nowhere close to establishing as a matter of law the type of personal liability found in *Eubank v. First National Bank of Bellville,* where a clearly denominated "Loan Guaranty Agreement" contained language[7] which "clearly establishe[d] Segundo as the borrower, the Bank as creditor, and "the undersigned" as guarantor, in his personal capacity and not as a Segundo representative." *Eubank v. First National Bank of Bellville,* 814 S.W.2d 130, 133 (Tex.App.-Corpus Christi 1991, no writ). Furthermore, the secondary obligor executed the guaranty two days after the due date of the note for the purpose of obtaining an extension.

Likewise, the language of guaranty in *American Petrofina* clearly establishes its intent:

> To induce you to sell gasoline and other petroleum products to McMurry Oil Company, Inc., of Pecos, Texas, (hereinafter referred to as the Principal), I hereby guarantee to you the payment of such sum or sums now due and as may at any time, .... I covenant and agree that jointly with the Principal and severally I shall be liable and responsible for and shall pay to you all sums that may be due or become due by the Principal.

*American Petrofina Co. of Texas v. Bryan,* 519 S.W.2d 484, 486 (Tex.Civ.App.-El Paso 1975, no writ). Adding one's corporate status as president to a signature

---

**6.** There is no evidence that Wilkerson was a shareholder or owner of the business for whom credit was extended or would have benefitted in any manner from this transaction.

**7.** The Loan Guaranty Agreement executed by Lindsey, the secondary obligor, stated, in pertinent part:

> For Value Received and to enable Segundo Corp. Inc. of Sinton, Texas, hereinafter designated as "Debtor," to obtain credit, from time to time, of First National Bank of Bellville, we hereby request said Creditor to extend to said Debtor such credit as said Creditor may deem proper, and we hereby jointly and severally guarantee the full and prompt payment to Creditor at maturity, and at all times thereafter, and also at the time hereinafter provided, of any and all indebtedness, liabilities, and obligations of every nature and kind of said Debtor to said Creditor....
>
> This guaranty shall be binding upon the undersigned jointly and severally, and upon the heirs, legal representatives and assigns

of the undersigned, and each of them, respectively, and shall inure to the benefit of said Creditor, its successors, legal representatives and assigns.

> Signed and Sealed by the undersigned, at Bellville, Texas this October 27th day of, 1988.
>
> Lindsey Eubank [signature]
> Secretary–Treasurer [handwritten]
> Segundo Corp., Individually [handwritten]

There was additional evidence from a bank representative who stated that he personally emphasized to Eubank prior to the execution of the guaranty that Eubank was signing in his individual capacity, and that he handprinted the word "Individually" below the signature line before Eubank signed the document. Eubank disputed this, however, the court here was dealing with a clearly-worded guaranty agreement that spoke for itself. Under the circumstances, the court found that the capacities in which Eubank's signature appeared were immaterial. *See Eubank,* 814 S.W.2d at 132–34.

on such clearly-worded obligations of "guarantee" to be "jointly ... and severally liable" added nothing material to this obligation. Cases where courts have found the corporate designation after a guarantor's signature to be merely *descriptio personae* involved strongly-worded guarantee agreements. The language construed by the majority in the instant case, however, is a far cry from putting a corporate officer on notice that she is personally guaranteeing a corporate debt.

Finally, when reviewing a summary judgment granted on general grounds, the appeals court considers whether any theories set forth in the motion will support the summary judgment. *See Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995). When the trial court's judgment rests upon more than one independent ground or defense, the aggrieved party must assign error to each ground, or the judgment will be affirmed on the ground to which no complaint is made. *See Bailey v. Rogers*, 631 S.W.2d 784, 786 (Tex.App.—Austin 1982, no writ); *Hudson v. Buddie's Super Markets, Inc.*, 488 S.W.2d 143, 147–48 (Tex.Civ.App.—Fort Worth 1972, no writ). In addition to the issue concerning the alleged guarantee, Wilkerson also asserted that there is no evidence that an enforceable contract was formed between Taylor–Made Hose and Wilkerson, individually. Indeed, there is no evidence of a Wilkerson signature in her individual capacity before the court. *See* Tex. Bus. & Com.Code § 3.402(b)(1) (Vernon Supp.1999) (where signature shows unambiguously that the signature is made on behalf of represented person, representative not liable). Taylor–Made did not respond with evidence below or challenge any of these grounds on appeal. In its reply brief on rehearing, Taylor–Made argues that it had no obligation to respond in order to defeat a no-evidence motion other than to "raise the fact issue," and rests on Don Taylor's affidavit that credit was extended and then shifts to the bankruptcy evidence supplied through Wilkerson's motion for summary judgment, argu-ing *ergo* something must still be owed. Again, because the Taylor affidavit was essentially gutted by Wilkerson's objections, Taylor–Made has not met its obligation to come forward with sufficient evidence to withstand a directed verdict.

The majority's opinion puts at risk the personal estates of corporate officers and employees across the State of Texas. Hard-working and loyal company employees who are routinely authorized to sign credit applications in the course of business on behalf of the company, can now easily be lured into personally guaranteeing the debts of their employer no matter how weakly-worded and despite the fact that they are signing the document solely in their official capacity.