

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00117-CV

**NB 2021 GP, LLC**, and NB 2021, LP,
Appellants

v.

**FM 725 LLC**,
Appellee

From the 2nd 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 22-1219-CV-A
Honorable Jessica Crawford, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Luz Elena D. Chapa, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: June 12, 2024

AFFIRMED

After ruling on cross-motions for summary judgment, the trial court entered a final judgment that appellants NB 2021 GP, LLC and NB 2021, LP take nothing by their claims. On appeal, appellants argue that either the evidence conclusively establishes their entitlement to relief or that unresolved fact questions remain. They also argue that the trial court erred by striking summary-judgment evidence. We overrule appellants' issues and affirm.

**BACKGROUND**

This appeal concerns the limited partnership NB 2021, LP (the "Partnership"). The general partner of the Partnership is NB 2021 GP, LLC (the "General Partner"). On December 8, 2021, the General Partner entered into a partnership agreement with appellee FM 725 LLC and several other limited partners. Pursuant to the agreement, FM 725 was to contribute land to the Partnership, and the General Partner was to secure financing and to lead development. The agreement required FM 725 to transfer its land to the Partnership "at the Construction Loan closing" and to contribute equity.[1] However, FM 725's obligation to transfer its land was subject to two provisions that are in dispute.

Section 2.5(a) of the agreement provides:

> If the General Partner does not elect to consummate the acquisition of the Real Property and/or cannot obtain the Construction Loan on terms acceptable to the General Partner or for any other reason in its sole discretion the General Partner determines that the Project is not feasible or advisable, in each case by the Outside Date, then [FM] 725 shall have no obligation to transfer the Real Property or to make its Initial Capital Contribution and shall automatically be deemed to be withdrawn from the Partnership effective as of 11:59 pm on the Outside Date . . . .

Section 2.5(b) provides:

> If the General Partner is unable to obtain a Construction Loan providing for a twenty[-]five percent (25%) maximum equity contribution (in relation to the cost of construction of the Project set forth in the Development Budget) by the Partners on or before the Outside Date, or if the Partners are not otherwise able to agree on an updated Development Budget, then [FM] 725 may elect, by issuing written notice prior to the Outside Date, not to proceed with the contribution of the Real Property and in such event, [FM] 725 shall have no obligation to transfer the Real Property or make their Initial Capital Contribution and shall automatically be deemed to be withdrawn from the Partnership effective as of 11:59 pm on the Outside Date . . . .

---

[1] The agreement defines "Construction Loan" as "the loan in the approximate amount of $28,000,000.00 to be obtained by the Partnership to finance the Partnership's construction of the Project."

The agreement defines "Outside Date" as "one hundred sixty (160) days after the Effective Date of this Agreement, but in no event after the Construction Loan has been obtained." The effective date of the agreement was December 8, 2021, and 160 days after that date was May 17, 2022.

On May 16, 2022, FM 725 sent a letter to the Partnership giving written notice, pursuant to Section 2.5, of its election not to proceed with its property contribution. Appellants then sued FM 725 for declarations that:

> (a) Section 2.5 of the Partnership Agreement does not entitle [FM 725] to withdraw the Real Property from the Partnership[; and]
>
> (b) [the General Partner] is entitled to specific performance ordering FM 725 to convey the Real Property to the Partnership.

Thereafter, appellants filed a traditional motion for summary judgment on their declarations, and FM 725 filed a combined traditional and no-evidence motion for summary judgment, seeking to defeat appellants' declaratory claims. FM 725 also filed a motion to strike some summary judgment evidence submitted by appellants. The trial court granted FM 725's motion to strike and FM 725's motion for summary judgment and denied appellants' cross-motion for summary judgment. The trial court then entered a final judgment that appellants take nothing on their claims.

Appellants appeal from these rulings. Appellants contend (1) the trial court improperly struck their summary-judgment evidence; (2) appellants established, as a matter of law, that they had obtained the necessary construction loan, so as to preclude FM 725's election not to proceed; and (3) even if appellants had not obtained the construction loan as a matter of law, they raised an issue of material fact as to whether they had done so to preclude summary judgment.

We overrule appellants' issues and address only two matters necessary to resolve this appeal. *See* TEX. R. APP. P. 47.1. First, we hold the trial court did not err by granting FM 725's no-evidence motion for summary judgment because appellants provided no competent evidence

to show they had obtained the construction loan contemplated by Section 2.5(b). Second, we hold the trial court did not err by striking appellants' summary-judgment evidence.

## STANDARD OF REVIEW

We review a trial court's ruling on summary judgment *de novo*. *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 278 (Tex. 2018). For a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Id.* (citing TEX. R. CIV. P. 166a(c)). For a no-evidence motion for summary-judgment, the movant contends that no evidence supports one or more essential elements of a claim for which the nonmovant would bear the burden of proof at trial. TEX. R. CIV. P. 166a(i). A trial court must grant a no-evidence motion unless the nonmovant raises a genuine issue of material fact on each challenged element. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015) (citing TEX. R. CIV. P. 166a(i)). We uphold a no-evidence summary judgment if the summary-judgment record reveals no evidence of the challenged element, *i.e.*, "(a) a complete absence of evidence [as to the challenged element]; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove [the challenged element]; (c) the evidence offered to prove [the challenged element] is no more than a mere scintilla; [or] (d) the evidence establishes conclusively the opposite of the [challenged element]." *Taylor-Made Hose, Inc. v. Wilkerson*, 21 S.W.3d 484, 488 (Tex. App.—San Antonio 2000, pet. denied) (en banc) (citation omitted).

"When both parties move for summary judgment and the trial court grants one motion and denies the other, we review all the summary judgment evidence, determine all issues presented, and render the judgment the trial court should have." *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). If a party moves for summary judgment on both traditional and no-evidence grounds, we generally consider the no-evidence motion first, and we need not address the

traditional motion to the extent it addresses the same claim. *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 261 (Tex. 2020); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). When reviewing both traditional and no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant against whom summary judgment was rendered. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017).

We review a trial court's rulings on the exclusion of summary-judgment evidence for abuse of discretion. *Hernandez v. Zapata*, No. 04-19-00507-CV, 2020 WL 3815932, at *3 (Tex. App.—San Antonio Jul. 8, 2020, no pet.) (mem. op.); *Wolfe v. C.S.P.H., Inc.*, 24 S.W.3d 641, 646 (Tex. App.—Dallas 2000, no pet.). A trial court abuses its discretion when its ruling is "arbitrary, unreasonable or without reference to any guiding rules or legal principles." *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000). If the trial court does not specify the basis for striking evidence, the reviewing court must affirm the ruling "if any ground is meritorious." *Id.* Additionally, "we will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment." *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998) (citing TEX. R. APP. P. 44.1).

## DISCUSSION

Appellants sought declarations that "Section 2.5 of the Partnership Agreement does not entitle [FM 725] to withdraw the Real Property from the Partnership," and that the General Partner "is entitled to specific performance ordering FM 725 to convey the Real Property to the Partnership." As to this second declaration, appellants argue for specific performance based on their contention that FM 725 cannot look to Section 2.5 to withdraw.

Section 2.5 of the partnership agreement concerns the parties' rights and obligations arising when the General Partner "cannot obtain" or "is unable to obtain" a construction loan before the

Outside Date. We resolve this appeal by looking to Section 2.5(b). Section 2.5(b) provides that "[i]f the General Partner is unable to obtain a Construction Loan providing for a twenty[-]five percent (25%) maximum equity contribution . . . by the Partners on or before the Outside Date," then FM 725 "may elect . . . not to proceed with contribution of the Real Property" and "shall automatically be deemed to be withdrawn from the Partnership." In its no-evidence ground for summary judgment, FM 725 asserted there is no evidence the General Partner had obtained such a loan by the Outside Date. Appellants responded with evidence purporting to show that the General Partner had obtained the loan contemplated by Section 2.5(b) by the Outside Date.

Appellants filed three pieces of summary-judgment evidence which they argue establishes — or raises a genuine issue of material fact — that they obtained a construction loan with a twenty-five percent maximum equity contribution by the Outside Date, *i.e.*, the loan contemplated by Section 2.5(b). We hold the trial court did not abuse its discretion by excluding two of those pieces of evidence, and the third piece is no evidence of the loan contemplated by Section 2.5(b). Therefore, appellants have not provided any evidence that they had obtained the loan necessary to support their declarations, and we affirm summary judgment on FM 725's no-evidence ground. *See* TEX. R. CIV. P. 166a(i); *Taylor-Made Hose*, 21 S.W.3d at 488.[2]

1. The Email

The first piece of summary-judgment evidence is an email communication from a representative of FM 725 to representatives of appellants.[3] In the email, the sender states:

> Greg, Doug and I have been attempting to analyze the two lender's construction loans for the FM 725 MHC development and have attached an Excel spreadsheet for review and discussion purposes only. Please note, we are not trying to direct or

---

[2] We focus our review on evidence appellants adduced in their attempt to show the General Partner had obtained a loan with a maximum equity contribution of twenty-five percent because the General Partner's failure to obtain such a loan is alone sufficient under Section 2.5(b) to support FM 725's election not to proceed. We do not review whether the trial court erred by striking evidence going to other matters because, under our holding, any error in striking other evidence is immaterial to the judgment. *See* TEX. R. APP. P. 44.1(a); 47.1.

[3] The parties do not dispute that the sender of the email is an agent of FM 725.

control the loan process to include choosing the eventual lender.  However, we did the best we could to try to compare the two loans, although there are some apple and orange comparisons in the model.

The email then gives "comparison highlights" including:

The loan amount differential is approximately $6.5 million.  Trez Capital = $31,193,600; the Moody loan = $24,618,000.  The Trez Capital allows for a 80% LTC wherein we anticipate the Moody Bank maximum LTC to be 75%, although that is not a given.

FM 725 objected to this email as summary-judgment evidence on several grounds, including that the statements amount to hearsay.  Without specifying its reasons, the trial court struck the email as evidence.  Under these circumstances, we must uphold the ruling if any ground is meritorious.  *See K-Mart*, 24 S.W.3d at 360.  We hold the trial court did not abuse its discretion by excluding the email as hearsay.

Hearsay is as an out-of-court statement that a party offers into evidence to prove the truth of the matter asserted.  TEX. R. EVID. 801(d); *Hernandez*, 2020 WL 3815932, at *6.  It is inadmissible unless otherwise allowed by statute, the Texas Rules of Evidence, or other rules prescribed under statutory authority.  TEX. R. EVID. 802.

Appellants argue that the email was not offered to prove the truth of any matter asserted in the email, but only to demonstrate that "FM 725 had received and was aware of the specific terms of two loans."  However, even if we agree that the email could have been used for that purpose, appellants offered it in an attempt "to prove the truth of the matter asserted" that both loans required a twenty-five percent or less equity contribution.  *See* TEX. R. EVID. 801(d)(2).  As the email states, one loan allowed "for a 80% LTC" and the other was anticipated "to be 75%."  Appellants cited to this language in their summary-judgment motion to argue that the General Partner had obtained the loan contemplated by Section 2.5(b), which was a loan "providing for a twenty-five percent (25%) maximum equity contribution."  Likewise, the manager of the General

Partner stated in his summary-judgment affidavit, which we discuss below, that the email shows one lender offered more favorable terms than a twenty-five percent equity contribution. Because appellants offered these statements in the email to prove the truth of the matters asserted, the statements constitute hearsay. *Id.*

Appellants also argue that the email should not have been excluded even if it was hearsay because it falls within an exception for statements made against interest. *See* TEX. R. EVID. 803(24)(A). A statement against interest is admissible as an exception to the hearsay rule when:

> [A] reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability or to make the declarant an object of hatred, ridicule, or disgrace[.]

*Id.*; *see Robinson v. Harkins & Co.*, 711 S.W.2d 619, 621 (Tex. 1986). Appellants have not provided any argument or authority to suggest how this standard was met. *See* TEX. R. APP. P. 38.1(i) (providing appellant's brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").[4] Specifically, appellants have not explained how the statements in the email were against FM 725's interest "when made." *See* TEX. R. EVID. 803(24) (specifying inquiry is whether statement "when made . . . was so contrary" to declarant's interest); *see also Travelers Cos. v. Wolfe*, 838 S.W.2d 708, 714 (Tex. App.— Amarillo 1992, no writ) ("Inherent in the rule is that the admissibility of the statement as one against [declarant's] interest must be tested as of the time it was made.").

We hold the trial court did not abuse its discretion by excluding the email as summary-judgment evidence on the ground that it was inadmissible hearsay. *See* TEX. R. EVID. 801(d), 802.

---

[4] Appellants cite to *American Maintenance & Rentals, Inc. v. Estrada*, 896 S.W.2d 212, 219 n.4 (Tex. App.—Houston [1st Dist.] 1995, writ dism'd by agr.); however, the issue in that case was whether agency had been established, which is not relevant in the instant case, and the Rule 803(24) standard was not met in *American Maintenance*. *See id.*

2.  The Manager's Affidavit

Another piece of summary-judgment evidence that appellants provided was the affidavit of James W. Field, the manager of the General Partner.  The trial court struck much of the affidavit, including a statement that the General Partner had "located financing from at least two lenders" and the following:

> It is my belief that FM 725 cannot withdraw the Real Property from the Partnership because the conditions for that withdrawal did not, and could not, occur as a matter of fact. We had obtained the Construction Loan and the General Partner — whom I am speaking for — was willing, ready and able to move forward.

Further, citing to the email discussed above, Field asserts:

> The "Outside Date" had a defined end point as "one hundred sixty (160) days after the Effective Date of this Agreement, but in no event after the Construction Loan has been obtained."  I have chosen the date of February 15, 2022 as a clear date to demonstrate the accrual of the Outside Date because there is an email discussion with all of the partners about the Construction Loan on that date — thus there is simply no question that everyone knew of the event by that time.

Field also states:

> The General Partner obtained a Construction Loan providing for a twenty[-]five percent (25%) maximum equity contribution.  In fact, according to the email . . . for Trez Capital it was even more favorable.

FM 725 moved to strike these statements, arguing, among other things, that the statements were conclusory and lacked a reliable foundation.  FM 725 also asserted that the email relied upon by Field constituted inadmissible hearsay.

As we held above, the trial court did not abuse its discretion by striking the email as hearsay; therefore, it also did not abuse its discretion by striking as hearsay statements in Field's affidavit that were based upon the email.  *See Wiggins v. Overstreet*, 962 S.W.2d 198, 201 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) ("Affidavits may not be based on hearsay."); *see also Grewal v. Hickenbottom*, No. 04-03-00339-CV, 2003 WL 22295373, at *2–3 (Tex. App.—San Antonio Oct. 8, 2003, pet. denied) (mem. op.) ("Affidavits containing multiple levels of

hearsay are admissible only if each component hearsay statement qualifies under an exception to the hearsay rule." (citing TEX. R. EVID. 805)).

Field's statement, that "The General Partner obtained a Construction Loan providing for a twenty[-]five percent (25%) maximum equity contribution," is a statement that appears to be based solely upon the email discussed above because the sentence that follows refers to that email. If the statement has any other basis, that basis has not been explained. Therefore, Field's statement was properly excluded as hearsay, or the statement was conclusory and for that reason properly excluded. "Conclusory affidavits are not probative." *Starwood Mgmt., LLC by & through Gonzalez v. Swaim*, 530 S.W.3d 673, 679 (Tex. 2017). A self-serving affidavit from an interested party must be clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and readily controvertible to support summary judgment. *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997). An affidavit that states only legal or factual conclusions without providing factual support is not proper summary-judgment evidence because it is not credible or susceptible to being readily controverted. *See Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no pet.).

Field's statement is conclusory because it does not state any underlying facts to support the conclusion that the General Partner obtained a loan with a twenty-five percent maximum equity contribution. Field does not explain what bank provided the loan, how an offer was made (e.g., in writing or orally), by whom, and when. Field also does not refer to any documents, other than to the email struck for hearsay. *Cf. Rest. Enters., L.P. v. Travelers Indem. Co.*, No. 03-07-00571-CV, 2010 WL 153610, at *4 (Tex. App.—Austin Jan. 15, 2010, no pet.) (mem. op.) (holding statement in affidavit that there was an agreement between parties requiring restaurant to pay

insurance premiums on all locations was conclusory because affiant did not attach policies or otherwise provide factual basis for his conclusion).[5]

Field's statement that, "the conditions for [FM 725's] withdrawal did not, and could not, occur as a matter of fact," is similarly conclusory because it is not supported by any underlying facts that could establish that the General Partner obtained a loan with a twenty-five percent maximum equity contribution, as contemplated by Section 2.5(b).

### 3. The Offer Letter

Last, we consider an offer letter from a lender specifying an equity contribution for a loan of twenty percent. However, there is no indication in the offer letter that the loan was for the development project that the parties were jointly pursuing. The parties' partnership agreement defines "Construction Loan," as a loan "to finance the Partnership's construction of the Project." The agreement's definition of "Project" references an attached site plan, and the site plan is for a "Vista Lago Estates" in New Braunfels, Texas. In contrast, the offer letter states a purpose for the proposed loan: "To develop the Enclave Portfolio consisting of the Enclave at Santa Fe (328 lots), Enclave at Pearland (420 lots), Enclave at San Antonio (447 lots), and Enclave at Rosehill (446 lots)." The offer letter is dated November 18, 2021, which was before the effective date of the parties' partnership agreement.

---

[5] Appellants suggest in their brief that only legal conclusions can be excluded as conclusory; however, our precedent allows exclusion of conclusory factual assertions as well. *See, e.g.*, *City of San Antonio v. Int'l Ass'n of Fire Fighters, Local 624*, 582 S.W.3d 455, 463 (Tex. App.—San Antonio 2018, no pet.) (holding statement that hired person does "not perform . . . fire administration" was conclusory); *Cantu v. Salcedo*, No. 04-07-00161-CV, 2007 WL 2608369, at *3 (Tex. App.—San Antonio Sept. 12, 2007, no pet.) (mem. op.) (reversing summary judgment, which was based on conclusory statements in plaintiff's affidavit that he made mortgage payments to defendant); *see also Albright v. Good Samaritan Soc'y-Denton Vill.*, No. 02-16-00090-CV, 2017 WL 1428724, at *3 (Tex. App.—Fort Worth Apr. 20, 2017, no pet.) (mem. op.) ("Conclusory statements in an affidavit, whether legal or factual, are not credible or susceptible to being readily controverted, and thus conclusory statements will not support a summary judgment."); *Methodist Hosp. v. Zurich Am. Ins. Co.*, 329 S.W.3d 510, 530 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("A conclusory statement can be either a legal conclusion or factual conclusion.").

On its face, the offer letter does not appear relevant to the project pursued by the parties, and appellants have provided no affidavit testimony or other evidence to explain the letter's connection to the parties' project. While the trial court did not strike this piece of summary-judgment evidence, it is no evidence showing the General Partner had obtained the construction loan contemplated by Section 2.5(b). *Cf. Taylor-Made Hose*, 21 S.W.3d at 488 ("We will uphold a no-evidence summary judgment . . . if the summary judgment record reveals . . . a complete absence of evidence [as to the challenged element].").

In short, appellants argue that their summary-judgment evidence conclusively proves they "obtain[ed] a Construction Loan providing for a twenty[-]five percent (25%) maximum equity contribution . . . by the Partners on or before the Outside Date" or that their evidence raised a fact question as to the matter. Their only evidence on this matter was excluded by the trial court, acting within its discretion, or is no evidence of such a loan. Therefore, appellants produced no evidence to support their requested declarations, and summary judgment in FM 725's favor on its no-evidence summary-judgment ground was required. *See* TEX. R. CIV. P. 166a(i); *Taylor-Made Hose*, 21 S.W.3d at 488; *Hernandez*, 2020 WL 3815932 *3.

## CONCLUSION

The trial court's judgment is affirmed.

Rebeca C. Martinez, Chief Justice